IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

B&B HARDWARE, INC.                          *
                                            *
                    Plaintiff,              *
                                            *
vs.                                         *        No. 4:06CV01654 SWW
                                            *
HARGIS INDUSTRIES, INC. d/b/a,              *
SEALTITE BUILDING FASTENERS, and            *
d/b/a EAST TEXAS FASTENERS, and             *
DOES 1 through 10, inclusive,               *
                                            *
                    Defendants.             *
                                            *

**Memorandum Opinion and Order**

Before the Court are plaintiff's motion to re-transfer to which defendants responded and

plaintiff replied, and defendants' motion to dismiss to which plaintiff responded.  The Court

heard oral arguments on the motions on July 16, 2007.  The parties filed supplemental briefs on

July 31, 2007. For the reasons stated below, the Court finds the motion to re-transfer to the

California district court should be denied, and the motion to dismiss should be granted.

**Background**

Plaintiff B & B Hardware, Inc. ("B&B") is a California corporation that designs,

manufactures, and markets self-sealing fasteners under the mark of "Sealtight."  In May 1990,

B&B filed an application with the Patent and Trademark Office ("PTO") to register  "Sealtight."

On October 12, 1993, the PTO granted B&B's "Sealtight" trademark for threaded and

unthreaded metal fasteners and related hardware including nuts, bolts, and washers.

Sealtite Building Fasteners ("SBF") is a division of defendant Hargis Industries, Inc.

1

("Hargis"), a Texas corporation.  SBF manufactures a line of self-drilling and self-tapping screws and other fasteners that are frequently used to construct metal buildings.  In 1996, SBF filed an application with the PTO to register the trademark, "Sealtite."  The PTO refused to register "Sealtite" because of likely confusion with B&B's trademark "Sealtight."  In 1997, SBF filed a petition with the Trademark Trial and Appeal Board ("TTAB")  to cancel registration B&B's "Sealtight" trademark.  In response, B&B filed a complaint against SBF in the Eastern District of Arkansas alleging common law trademark infringement, breach of contract, law fraud, deceptive trade practices, and trademark infringement under the Lanham Act, 15 U.S.C. § 1117. *See B&B Hardware v. Hargis Industries, Inc.,* No. 4:98CV00372 (JWC).

The TTAB initially entered an order cancelling B&B's trademark, but re-instated the trademark pending resolution of the Arkansas action.  After the parties agreed to accept a verdict that was not unanimous, the jury found eleven to one that the term "Sealtight" was merely a descriptive term that had not acquired secondary meaning.  The verdict was affirmed on appeal. *B&B Hardware, Inc. v. Hargis Industries, Inc*., 252 F.3d 1010, 1012-13 (8th Cir. 2001).

Subsequently, the TTAB resumed proceedings at SBF's request regarding cancellation of B&B's trademark.  In July  2002, the TTAB granted SBF's motion for summary judgment and cancelled B&B's registration.  In June 2003,  the  TTAB granted B&B's request for reconsideration and set aside the grant of summary judgment in favor of SBF.  The TTAB dismissed SBF's petition to cancel and reinstated B&B's mark.

In the meantime, SBF's attempt to register its Sealtite mark was proceeding.  In February 2003, B&B filed a notice of opposition, and on May 22, 2003, before the TTAB's reversal detailed above, SBF moved for summary judgment on the issue of likelihood of confusion,

urging that the district court's determination in the Arkansas suit should be given preclusive effect. The TTAB denied Hargis's motion for summary judgment in August 2004.  The matter remains pending before the TTAB.

B&B filed the current action on August 4, 2006, in the district court for the Central District of California, alleging that Hargis's continued use of the "Sealtite" mark in connection with its fasteners and other products constitutes trademark infringement, unfair competition, trademark dilution, and false designation of origin.  The Honorable Percy Anderson, United States District Judge for the Central District of California, ordered the parties to show cause why the matter should not be transferred to the Eastern District of Arkansas.  On November 30, 2006, Judge Anderson ordered the action be transferred to Arkansas for the convenience of parties and witnesses and in the interest of justice.

B&B moves the Court to retransfer the case back to the Central District of California. Hargis moves for dismissal pursuant to Fed.R.Civ.P. 12(b)(6), arguing the case is barred by the doctrine of *res judicata*.

### Discussion

#### 1.  Motion to Retransfer

B&B argues that in making his decision to transfer the case, Judge Anderson gave undue consideration to the fact that prior litigation between the parties took place in Arkansas.  B&B further argues venue is not appropriate in the Eastern District of Arkansas.  In response, Hargis asserts Judge Anderson's ruling is the law of the case, the parties were provided a full and fair opportunity to litigate the issue, and nothing has happened since the ruling to warrant retransfer.

Under the "law of the case" doctrine, "courts should be loathe to [revisit prior decisions

of its own or of a coordinate court] . . . in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 817 (1988)(quoting *Arizona v. California,* 460 U.S. 605, 618 n.8 (1983).   The doctrine is applied to motions to retransfer in order to avoid "a perpetual game of jurisdictional ping-pong." *Id.* at 818.   Several circuits have interpreted this doctrine to prevent the transferee court from challenging the jurisdictional and venue determinations made by the transferor court.[1]   In *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 412 (9th Cir. 1985 ), the Ninth Circuit adopted this approach, concluding that: "The better rule is to bar reconsideration of these matters [jurisdiction and venue issues already decided by the transferor court] unless there is some indication that appellants were not afforded a full and fair opportunity to litigate these matters before the transferor court."

The Eighth Circuit has not spoken as unequivocally.   Although one district court seemed to endorse the view discussed above, *see Ry. Labor Executives' Ass'n v. Chicago and N. W. Transp. Co.,* 692 F.Supp. 1066, 1067 (D.Minn. 1988), the Court of Appeals implicitly condoned at least indirect examination of the original transfer decision upon a motion for retransfer.   *See U.S. v. Copley*, 25 F.3d 660 (8th Cir. 1994)(holding no jurisdiction to review North Carolina

---

[1]*See LaShawn A. v. Barry*, 87 F.3d 1389, 1394 (D.C. Cir. 1996) ("That the jurisdictional question exception . . . is no longer good law should come as no particular surprise.  Today, this court and other courts of appeals routinely apply law-of-the-case preclusion to questions of jurisdiction . . . and do so even when the first decision regarding jurisdiction is less than explicit.") (rehearing in banc) (internal citations omitted); *Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 167 (3d Cir. 1982) ("We conclude that Blaski should be interpreted . . . to allow a determination of venue and jurisdiction by the transferee court only when this determination has not previously been made by the transferor court.") (discussing *Hoffman v. Blaski*, 363 U.S. 335 (1960)); *but see Nascone v. Spudnuts, Inc.* 735 F.2d 763, 772 n.9 (3d Cir. 1984) (distinguishing *Hayman Cash Register* in concluding that "while the law of the case may preclude coordinate district courts from overruling each other, it would not have prevented the transferee circuit court (the Third Circuit) from in effect overruling on appeal . . . the determination of the transferor district court as to the determination of venue").

district court's decision to transfer, but remanding for retransfer because venue was improper in transferee Missouri district court, and court erred in implicitly denying motion to retransfer). Similarly, *Koehler v. Green*, 370 F. Supp. 2d 904 (E.D. Mo. 2005), suggests that review may be appropriate in some circumstances.  In *Koehler*, the plaintiff brought suit in the Southern District of New York.  Like the instant case, the action in *Koehler* was transferred *sua sponte* under § 1404(a) to the Eastern District of Missouri where related litigation had taken place.  As here, the plaintiff urged the court to retransfer.  After noting the prevailing disfavor of reviewing the transferor court's decision, "in an abundance of caution," the district court reviewed the grounds for the original transfer, ultimately concluding it was not in error.  *Id.* at 906-07. On appeal, the Eighth Circuit held that the plaintiff did not properly raise the issue whether the district court erred in denying retransfer.  *See Koehler v. Brody*, 483 F.3d 590, 599 (8th Cir. 2007).  However, in dicta the court noted:

> Even if we were to reach the issue, Koehler has not stated a sufficient basis for transferring the case or demonstrated that the Southern District of New York would be an appropriate venue for all the defendants in this case.  Since the consolidated cases had been litigated in the Eastern District of Missouri and the district court there was familiar with the background of this case, it was not an inappropriate venue.  The district court did not err by denying the motion to transfer.

*Id.*

Retaining authority to review Judge Anderson's decision and actually choosing to do so are different matters.[2]  In light of the above precedent, this Court elects to review the transfer

---

[2]*See Hite v. Norwegian Caribbean Lines*, 551 F. Supp. 390, 396 (E.D. Mich. 1982) ("I conclude that though I may have the independent power to review Judge Harrison's determination in order to retransfer the case to California, I should not re-examine the question of venue which Judge Harrison decided . . . . It is now for an appellate court-not for me-to correct any error . . . .")

decision, which B&B challenges on the basis of inappropriate venue.

As discussed above, this Court applies the law of the case doctrine to the instant case and refuses to allow B&B to second guess the wisdom of the transfer for a second time before this Court. The only question that remains is whether a rare exception would justify retransfer. As previously referenced, "the transferee-district should accept the ruling on the transfer as the law of the case and should not re-transfer 'except under the most impelling and unusual circumstances' or if the transfer order is 'manifestly erroneous.'"[3] Such circumstances include "where the original purposes of the transfer have been frustrated by an unforeseen later event."[4] Retransfer may also be appropriate when new evidence becomes available that was not before the transferor court, or if there is a change in applicable law. *See Hayman Cash Register*, 669 F.2d at 169-70.

None of these exceptions properly apply here. B&B asserts that an unusual circumstance justifying retransfer is present. Specifically, B&B contends that Judge Anderson relied too heavily upon the previous Arkansas action in choosing to transfer to the Eastern District of Arkansas. Indeed, B&B argues that it was the "overarching reason." *See* Reply to Defendant's Response to Motion to Retransfer at 4.

It is clear that Judge Anderson took the prior Arkansas litigation into account when selecting the Eastern District of Arkansas. *See* Order Transferring Action at 8-11. *Arguendo*, it may have even been the factor that convinced Judge Anderson that the Eastern District of

---

[3]*In re Cragar Indus.*, 706 F.2d 503, 505 (5th Cir.1983) (quoting *U.S. v. Koenig*, 290 F.2d 166, 173 n.11 (5th Cir. 1961); *Ry. Labor Executives' Ass'n v. Chicago and Nw. Transp. Co.*, 692 F. Supp. 1066, 1067 (D. Minn. 1988).

[4]*Id.* (citing 15 Wright, Miller, & Cooper, *Federal Practice & Procedure* § 3846 (1976)).

Arkansas was a better forum than Texas.  However, what is most obvious is that the prior litigation was not the only factor that Judge Anderson weighed in concluding that the Central District of California was a less convenient  forum.  Judge Anderson explicitly considered a number of other factors, including the areas where Hargis's sales are concentrated, the convenience of the parties and likely witnesses, and the availability of the evidence.  This Court would not presume to find that the specific weights that Judge Anderson attached in his careful consideration of the necessary factors justifying transfer produced a result that was "manifestly erroneous."  Furthermore, B&B cites no authority indicating that any court has interpreted reliance upon prior litigation in another forum in granting a 1404(a) transfer as constituting a "most impelling and usual" circumstance.  To the contrary, consideration of prior litigation in other forums in transfer determinations seems both natural and prudent.  *See, e.g.*, *Koehler*, 370 F. Supp. 2d at 905.   As Judge Anderson notes, prior litigation may inform evaluations of how convenient the transferee forum would be with respect to parties, witnesses, and evidence.  Finally, no significant change in events or evidence has occurred that would convince this Court that Judge Anderson's decision would be any different if he were deciding whether to transfer the case today.

Under 28 U.S.C. § 1404(a), "for the convenience of parties and witnesses, and in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought" at the time it was instituted.  *See Hoffman v. Blaski*, 363 U.S. 335, 343 (1960). This action might have been brought in the Eastern District of Arkansas because subject matter jurisdiction, personal jurisdiction, and venue are proper in this forum.  It is undisputed that the Eastern District of Arkansas properly has subject matter jurisdiction over

this federal question suit which was brought pursuant to the Lanham Trademark Act.  15 U.S.C. § 1125.

The Eastern District of Arkansas also properly has personal jurisdiction over the defendant.  B&B's complaint alleges that Hargis was subject to personal jurisdiction in the Central District of California because Hargis transacted business, or purposefully availed itself of the privilege of doing business, there and wrongfully infringed B&B's mark.  *See* Compl. at ¶ 3.  As Judge Anderson correctly noted, however, Hargis's products are sold and marketed much more extensively in the Eastern District of Arkansas compared to the Central District of California.  *See Order Transferring Action* at 7.  As a result, the Eastern District of Arkansas has personal jurisdiction over the Defendant.

B&B contends that venue is not properly laid in the Eastern District of Arkansas and therefore, the Central District of California should not have transferred the case under § 1404(a).  However, under the applicable venue provision, 28 U.S.C. § 1391, the Eastern District of Arkansas is a proper venue.  Under § 1391(b)(1), venue is proper in a federal question suit in a district "where any defendant resides, if all defendants reside in the same State."  Section 1391(c),  further provides that, for the purposes of venue, "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."  For the reasons above, Hargis is subject to personal jurisdiction in the Eastern District of Arkansas.  Therefore, venue is proper in the Eastern District of Arkansas under § 1391(b)(1).

Alternatively, venue would be proper under § 1391(b)(2) which provides that venue may be laid in "a judicial district in which a substantial part of the events or omissions giving rise to

the claim occurred."  In a suit for trademark infringement, the events or omissions giving rise to

the claim occur in the districts "where the passing off occurs."  *See Cottman Transmission Sys.,*

*Inc v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994).  It is possible that venue may be proper in more

than one district in a suit for trademark infringement.  *Id.*  B&B argues that venue was proper in

the Central District of California because a substantial part of the events or omissions giving rise

to the claim occurred in that district.  *See* Compl. at ¶ 4.  In particular, B&B alleges that Hargis

is actively selling goods bearing the infringing mark in the Central District of California.

Amended Brief in Support of Motion to Retransfer at 11.  Because Hargis sells a significantly

higher proportion of its goods in the Eastern District of Arkansas, even more of the alleged

"passing off" would necessarily occur in this district.   B&B's contention that venue is not also

proper in the Eastern District of Arkansas is therefore unavailing.  Although B&B alleges, in

addition, that injury to goodwill and confusion in the marketplace are occurring in the Central

District of California, *id.* at 11-12, these claims are not sufficient to convince this Court that the

Eastern District of Arkansas is not a valid venue for this action as well.

    In the order transferring the case, Judge Anderson balanced the necessary factors and

concluded that the transfer was in the interest of the parties, witnesses, and justice.  First, Judge

Anderson gave minimal weight to B&B's choice of forum because of the "tenuous relationship

between this forum [the Central District of California] and the events giving rise to Plaintiff's

claim."  Order Transferring Action at 7.

    Second, Judge Anderson felt that the convenience-of-the-parties factor favored transfer to

the Eastern District of Arkansas.  He reasoned that the Eastern District of Arkansas is: (1) where

more of the activities related to the alleged infringement took place; (2) closer to Hargis's

headquarters and records; and (3) more familiar with the parties and likely evidence as a result of previous litigation.  Order Transferring Action at 8.  Additionally, Judge Anderson felt that the hardship the transfer might pose to B&B was "substantially undermined by its previous decision to litigate there."  *Id.*

Third, the district court concluded that the Eastern District of Arkansas would be at least as convenient for the witnesses, and perhaps slightly more convenient.  *Id.* at 10.  Although many of B&B's employees and distributors are located in California, the Eastern District of Arkansas is much more convenient for Hargis's employees, witnesses, and customer base.  *Id.* at 9-10.  Also relevant is that the "substantial overlap between the proposed witnesses in this action and those that appeared in the prior Arkansas litigation, substantially mitigat[e] Plaintiff's argument that it would be difficult or impossible for its witnesses to appear in the Eastern District of Arkansas."  *Id.*

Relatedly, the district court determined that because a majority of the evidence regarding Hargis's alleged infringing sales and marketing was located closer to the Eastern District of Arkansas, that the ease of access to evidence factor also favored transfer.  *Id.* at 10.

Lastly, Judge Anderson determined that the interests of justice would be best served by the transfer in light of the above factors, and the importance that the interpretation of the effect of the  prior Arkansas litigation will play in the outcome of this matter.  *Id.* at 10-11.

The Court finds no convincing argument or reason to grant B&B's motion to retransfer the case.

### 2.  Motion to Dismiss Pursuant to Rule 12(b)(6)

In deciding a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of

the Federal Rules of Civil Procedure, all facts alleged in the complaint are assumed to be true. *Doe v. Northwest Bank Minn., N.A.*, 107 F.3d 1297, 1303-04 (8th Cir. 1997). The complaint must be reviewed in the light most favorable to the plaintiff, *McMorrow v. Little*, 109 F.3d 432, 434 (8th Cir. 1997), and should not be dismissed unless it is clear beyond doubt that the plaintiff can prove no set of facts thereunder which would entitle him or her to relief. *Hafley v. Lohman,* 90 F.3d 264, 266 (8th Cir. 1996). The Court may grant a motion to dismiss on the basis of a dispositive issue of law. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

A motion to dismiss is not a device for testing the truth of what is asserted or for determining whether the plaintiff has any evidence to back up what is in the complaint. *ACLU Foundation v. Barr*, 952 F.2d 457, 467 (D.C. Cir. 1991). The issue is not whether the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims, irrespective of a judge's disbelief of a complaint's factual allegations or a judge's belief that the plaintiff cannot prove what the complaint asserts. *Id. See also Hickman v. Tosco Corp.*, 840 F.2d 564, 565 (8th Cir. 1988); *Fusco v. Xerox Corp.*, 676 F.2d 332, 334 (8th Cir. 1982). Thus, a motion to dismiss should be granted "as a practical matter . . . only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

Hargis argues B&B's claims are barred on the basis of *res judicata*. It argues jury findings on the issues of descriptiveness and secondary meaning in the Arkansas case preclude B&B raising those issues in this case. B&B asserts that since the jury's findings in the Arkansas case, B&B has obtained an incontestable mark which renders those findings irrelevant.

11

"Res judicata precludes the relitigation of a claim on grounds that were raised or might have been raised in a prior action.  Res judicata consists of two preclusion concepts-issue preclusion and claim preclusion." *Klipsch, Inc. v. WWR Tech., Inc.,* 127 F.3d 729, 733 (8ᵗʰ Cir. 1997).  "The claim preclusion aspect of res judicata . . .  provides that 'a final judgment on the merits bars further claims by parties or their privies based on the same cause of action.'" *Id.*  "The test applied to determine whether res judicata bars litigation of a claim is: (1) whether the prior judgment was rendered by a court of competent jurisdiction; (2) whether the judgment was a final judgment on the merits; and (3) whether the same causes of action and same parties or their privies were involved in both cases." *Gurley v. Hunt.* 287 F.3d 728, 731 (8ᵗʰ Cir. 2002).  "If the three elements are met, the parties are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.' " *Lundquist v. Rice Mem'l Hosp.,* 238 F.3d 975, 977 (8th Cir. 2001).

Hargis argues that the issues raised in the complaint before this Court are identical to those dealt with in the prior federal litigation.  B&B argues the causes of action are not identical because the earlier case involved infringement and damages claims up through 2000, and the action before the Court concerns claims from 2000 through the present.  B&B also argues that the operative facts are not the same because now it has an incontestable trademark, and there is no evidence of privity between the party defendants.[5]  B&B further asserts that the Court should give preclusive effect to the TTAB's decision that the doctrine of claim preclusion does not apply

---

[5]The 1998 lawsuit named Hargis, doing business as Sealtite Building Fasteners, as defendants. The complaint before the Court names Hargis doing business as both SBF and East Texas Fasteners as defendants.

as to the Arkansas jury's findings and the TTAB proceedings involving B&B's opposition to the registration of SBF's mark.

The Court finds B&B's claims involve alleged conduct occurring after the decision in the Arkansas case and thus are not barred by claim preclusion. *See Lundquist,* 238 F.3d at 977 ("Claim preclusion . . . does not apply to claims that did not exist when the first suit was filed").

Issue preclusion or collateral estoppel, applies "only when the party against whom preclusion is sought, was involved in a prior lawsuit and: 1) the issue sought to be precluded [was] the same as that involved in a prior action; (2) the issue [had been] actually litigated in the prior action; (3) the issue [had been determined] by a valid and final judgment; and (4) the determination [was] essential to the prior judgment." *Leonard v. Southwestern Bell Corp. Disability Income Plan,* 341 F.3d 696,701 (8th Cir. 2003).

Both plaintiff and defendant were parties to the previous Arkansas suit.  Each had a full and fair opportunity to be heard on the issues actually litigated in the prior action.  Additionally, a final and valid judgment was entered in the prior action.  Therefore, whether issue preclusion applies turns on what essential issues were determined in the prior action, and whether those issues are identical to the issues before the Court.

Hargis argues B&B should not be permitted to re-litigate the issue of trademark infringement in light of the determination in the prior Arkansas case .  B&B argues that collateral estoppel is not applicable because the issue decided in the Arkansas case, descriptiveness, is no longer relevant because B&B now has an incontestible mark.  B&B also argues the Court should give deference, if not preclusive effect, to decisions of the TTAB in proceedings between the parties.

As stated previously, in 1997, SBF filed a petition with the TTAB to cancel registration of B&B's "Sealtight" trademark.   That proceeding was suspended pending the resolution of the Arkansas case.   Thereafter, the TTAB initially cancelled B&B's registration but then granted B&B's motion for reconsideration and dismissed SBF's petition to cancel.   In its June 13, 2003, decision, the TTAB determined that SBF could not assert a descriptiveness claim because such a challenge was untimely.   Thus, SBF's attempt to cancel B&B's registration was unsuccessful.

In February 2003, B&B filed a notice of opposition to SBF's attempt to register its mark. In this separate proceeding, SBF filed a motion for summary judgment based on res judicata, arguing that the judgment in the Arkansas case should have preclusive effect on the TTAB proceeding.   On August 6, 2004, the TTAB denied SBF's motion for summary judgment.   B&B argues the TTAB's decision in B&B's opposition proceeding not to give preclusive effect to the judgment in the Arkansas case is dispositive of the Court's ability to do so here.

Relying on *Flavor Corp. of America v. Kemin Indus., Inc.,* 493 F.2d 275 (8th Cir. 1974), B&B argues the Court should give preclusive effect to the decisions of the TTAB.   In *Flavor Corp.*, the TTAB granted Flavor Corp.'s ("FCA's") petition to cancel Kemin's registration of its mark, and the Court of Customs and Patent Appeals ("CCPA")[6] affirmed the cancellation order on appeal, finding that the parties' marks were so confusingly similar as to cause a likelihood of confusion.   FCA then filed a trademark infringement action in federal court.   The Eighth Circuit held that "where the CCPA has found a likelihood of confusion between two similar marks in a cancellation proceeding, that fact is precluded from relitigation in a subsequent infringement

---

[6]Congress conferred Article III status upon the Court of Customs and Patent Appeals in 1958. In 1982, the Court of Customs and Patent Appeals was replaced by the Court of Appeals for the Federal Circuit.

action between the same parties under the doctrine of collateral estoppel." 492 F.2d at 281.

The issue before the Court involves a decision of the TTAB, an administrative tribunal of the PTO. The TTAB can only decide issues related to registration. It cannot adjudicate matters of infringement or unfair competition, which relate to the use of a mark. *See Pure Gold, Inc. v. Syntex (U.S.A.) Inc.,* 221 U.S.P.Q. 151, 153 (T.T.A.B. 1983)(allegation in an opposition that applicant's mark is a false designation of origin under § 43(a) of Lanham Act stricken because opposer can properly attack only applicant's right to registration; TTAB has no original jurisdiction over unfair competition claims), *aff'd,* 793 F.2d 624 (Fed.Cir. 1984); *Electronic Water Conditioners, Inc. v. Turbomag Corp.,* 221 U.S.P.Q. 162 (T.T.A.B. 1984)(unfair competition and claims under § 43(a) of Lanham Act are outside jurisdiction of TTAB).

Decisions by the TTAB only affect registration; they have no preclusive effect on any issues relating to infringement and unfair competition.

> Generally speaking, '[r]egistration proceedings present the question of whether the [applicant] is entitled to *register* its trademark.' *Tonka Corp.,* 836 F.Supp. at 213 (emphasis added); *see also* 15 U.S.C. § 1063(a) ("Any person who believes that he would be damaged by the *registration* of a mark upon the principal register ... may, upon payment of the prescribed fee, file an opposition in the Patent and Trademark Office, stating the grounds therefor.") (emphasis added). Litigation before the TTAB in opposition proceedings is, therefore, limited to whether one has the right to register a mark, and not whether one has the right to exclusive use of the mark in practice.

*Light Sources, Inc. v. Cosmedico Light, Inc.,* 360 F.Supp.2d 432, 440 (D.Conn.2005).

In *American Hygenic Laboratories, Inc. v. Tiffany & Co.,* 228 U.S.P.Q. 855, 857 (T.T.A.B. 1986), the TTAB stated:

> [A] claim of infringement before the court and a claim of priority and likelihood of confusion before this Board are different claims. The former claim is, in essence, a claim of injury resulting from applicant's *use* of its mark in commerce; the latter claim, in essence, is a claim that opposer believes it would be damaged by

*registration* of applicant's mark. While the determination of both claims may involve the determination of likelihood of confusion, trademark infringement and the right to use a mark are matters which the Board has no jurisdiction to consider.

When the TTAB declined to grant SBF's motion for summary judgment, it said:

Thus, the issue to be decided in applicant Hargis' motion for summary judgment is whether the district court's judgment dismissing the trademark infringement action can be given preclusive effect in this opposition based on likelihood of confusion. . . .

In this case, the parties are identical or in privity in both actions and the infringement litigation resulted in a valid judgment on the merits insofar as no infringement was found because B&B's mark was found descriptive and unprotectable. However, it is well settled that the transactional facts of a civil action for trademark infringement are not the same as those of an opposition which involves a determination of a right to register. The doctrine of claim preclusion therefore is inapplicable here.[7]

The Court finds the TTAB's decision not to give the Arkansas judgment preclusive effect in the registration proceeding has no bearing on this Court's application of claim or issue preclusion in this subsequent civil action. The Court further finds that the TTAB's finding that Hargis could not raise a descriptiveness claim in its challenge to B&B's registration is not entitled to preclusive effect in the case before the Court.

The ultimate issue in this litigation, as in the first Arkansas action, is whether Hargis' use of its Sealtite mark infringes B&B Sealtight mark. In trademark infringement suits, the "ultimate inquiry is whether, considering all the circumstances, a likelihood exists that consumers will be confused about the source of the allegedly infringing product." *Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.,* 182 F.3d 598, 602 (8th Cir. 1999). Trademark infringement consists of two elements: (1) valid trademark and (2) likelihood of confusion. The validity of a trademark is

---

[7]Ex. D at 6-7. The TTAB found that because the Arkansas case resulted in no finding on the issue of likelihood of confusion, issue preclusion was inapplicable.

determined by distinctiveness while likelihood of confusion is determined by the strength of the mark

> 'A term for which trademark protection is claimed will fall in one of four categories: (1) generic, (2) descriptive, (3) suggestive, or (4) arbitrary or fanciful.' *WSM, Inc. v. Hilton,* 724 F.2d 1320, 1325 (8th Cir.1984). A generic mark refers to the common name or nature of an article, and is therefore not entitled to trademark protection. *Co-Rect Prods., Inc. v. Marvy! Adver. Photography, Inc.,* 780 F.2d 1324, 1329 (8th Cir.1985). A term is descriptive if it conveys an 'immediate idea of the ingredients, qualities or characteristics of the goods,' *Stuart Hall Co., Inc. v. Ampad Corp.,* 51 F.3d 780, 785-86 (8th Cir.1995) (internal quotations omitted), and is protectible only if shown to have acquired a secondary meaning. *Co-Rect Prods.,* 780 F.2d at 1329. Suggestive marks, which require imagination, thought, and perception to reach a conclusion as to the nature of the goods, and arbitrary or fanciful marks, are entitled to protection regardless of whether they have acquired secondary meaning. See id.

*Frosty Treats, Inc. v. Sony Computer Entertainment America, Inc.,* 426 F.3d 1001, 1004-05 (8th Cir. 2005).  To make a determination of likelihood of confusion, the Eighth Circuit applies a six-factor test:

> (1) the strength of the owner's mark; (2) the similarity of the owner's mark to the alleged infringer's mark; (3) the degree to which the products compete with each other; (4) the alleged infringer's intent to 'pass off' its goods as those of the trademark owner; (5) incidents of actual confusion; and (6) whether the degree of care exercised by the consumer can eliminate a likelihood of confusion that otherwise would exist.

*Hubbard Feeds,* Inc., 182 F.3d at 602 (citing *Minnesota Mining & Mfg. Co. v. Rauh Rubber, Inc.*, 130 F.3d 1305, 1308 (8th Cir. 1997); *Squirt Co. v. Seven-Up Co.*, 628 F.2d 1086, 1091 (8th Cir. 1980)).

In the prior Arkansas action, the jury specifically found that B&B's mark was merely descriptive and had not acquired secondary meaning.  Generally, a descriptive mark "describes the ingredients, characteristics, qualities, or other features of the product and may be used as a trademark only if it has acquired a secondary meaning." *Schwan's IP, L.L.C. v. Kraft Pizza Co.,*

460 F.3d 971, 974 (8th Cir. 2006) (citing *CES Publ'g Corp. v. St. Regis Publ'ns, Inc*, 531 F.2d 11, 13 (2d Cir. 1975)).  To qualify for protection,  "a descriptive term must be so associated with the product that it becomes a designation of the source rather than of a characteristic of the product." *Id.* (citing *In re Merrill Lynch, Pierce, Fenner, and Smith, Inc.*, 828 F.2d 1567, 1569 (Fed. Cir. 1987).

Once a mark becomes incontestable, however, a defendant can no longer attack its validity by alleging it is merely descriptive and without secondary meaning.  *See Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 205 (1985) (finding that a trademark infringement suit brought by a plaintiff with an incontestable trademark "may not be defended on the grounds that the mark is merely descriptive").  Although *Park 'N Fly* recognizes that an incontestable trademark's validity cannot be challenged on descriptiveness grounds, the case was remanded for a finding on likelihood of confusion.  *Id.*  Thus, the validity of the trademark and the scope of its protection are related, but not necessarily synonymous inquiries.

Incontestability establishes the validity of the mark, and the registrant's ownership and right to use the mark, but that right is subject to proof of infringement as well as numerous defenses.  15 U.S.C. § 1115(b).  While such status is important for establishing the validity of the mark, and its ownership and use, it has no bearing on a trademark's strength.  *Munters Corp. v. Matsui America, Inc.,* 909 F.2d 250, 252 (7th Cir. 1990).  Incontestability alone does not confer strength on a trademark.  *Oreck Corp. v. U.S. Floor Sys., Inc.,* 803 F.2d 166, 171 (5th Cir. 1986).

Incontestability only addresses the first part of the infringement analysis - whether a mark is valid, entitled to protection, and owned by a plaintiff; incontestable status does not mean that a mark's strength cannot be attacked.  *HBP, Inc. v. American Marine Holdings, Inc.,* 290 F.Supp.2d

1320, 1329 (M.D.Fla. 2003).

The majority of courts agree that incontestable status does not make a weak mark strong. *See Therma-Scan, Inc. v. Thermoscan, Inc.,* 295 F.3d 623, 632 (6th Cir. 2002)(TSI's trademark, although valid and incontestable, is not an especially strong mark); *Entrepeneur Media, Inc. v. Smith,* 279 F.3d 1135, n.3 (9th Cir. 2002) ("the incontestable status of EMI's mark does *not* require a finding that the mark is strong"); *Petro Stopping Ctr., L.P. v. James River Petroleum, Inc.,* 130 F.3d 88 (4th Cir. 1997)(affirming finding that incontestable trademark was too weak to establish likelihood of confusion); *Gruner & Jahr USA Pub. v. Meredith Corp.,* 991 F.2d 1072, 1077-78 (2nd Cir. 1993)(incontestability may make a mark strong for validity, but it can still be weak for purposes of infringement); *Munters Corp.,* 909 F.2d at 252 (incontestability status has no bearing on strength); *Oreck Corp.,* 803 F.2d at 171 ("Incontestable status does not make a weak mark strong").

In explaining the majority rule, the Fourth Circuit expressly rejected B&B interpretation of *Park 'N Fly, Inc.*:

> In *Park 'N Fly*, the Supreme Court held that a defendant in an infringement suit cannot claim that an incontestable mark is merely descriptive and therefore invalid and undeserving of any protection.  The Court did not hold, however, that the descriptive nature of a mark may not be considered in the separate likelihood of confusion inquiry.  This characterization of the Court's holding is confirmed by the Trademark Law Revision Act of 1988, which amended one of the Lanham Act's incontestability provisions to clarify that '[s]uch conclusive evidence of the right to use the registered mark shall be *subject to proof of infringement*.'

*Petro Stopping,* 130 F.3d at 92.  As the Fourth Circuit articulated, *Park 'N Fly* made no holding that incontestability confers strength.  *Id.*

The Eighth Circuit has not directly addressed the significance of incontestibility on trademark strength.  In *General Mills, Inc. v. Kellogg Co.,* 824 F.2d 622 (8th Cir. 1987), the court

19

affirmed the district court's denial of a preliminary injunction, including its finding that Kellogg's federally registered mark was likely a weak mark. Kellogg had argued the district court failed to give conclusive weight to its trademark registration. The court stated: "[U]nder the Lanham Act, registration of a trademark is indeed prima facie evidence of the validity of the registration, the registrant's ownership of the mark, and of the registrant's exclusive right to use the mark in commerce in connection with the goods or services specified in the certificate of registration. However, a mark's registered status is only an evidentiary tool, and the fact of registration does not affect the plaintiff's ultimate burden of proof in an infringement action." *Id.* at 626.

In *Hubbard Feeds, Inc., supra,* the plaintiff argued that its mark was strong based on its incontestable status alone. The Eighth Circuit affirmed the denial of a preliminary injunction, holding Hubbard failed to present evidence of consumer confusion. In *Woodroast Sys., Inc. v. Restaurants Unlimited, Inc.*, 793 F.Supp. 906 (D. Minn. 1992), the court, citing *General Mills*, stated: "The court notes, however, that the incontestability of a mark does not affect its strength. A descriptive trademark, even if it has become incontestable, may only be entitled to minimal protection. *See Miss World (UK) Ltd v. Mrs. America Pageants*, 856 F.2d 1445, 1448-50) (9th Cir. 1988)(although incontestable, "Miss World" service mark found to be relatively weak)." *Id.* at 912 n.10. In *DowBrands, L.P. v. Helene Curtis, Inc.,* 863 F.Supp. 963 (D.Minn. 1994), the court cited *Woodroast Systems* and observed: "The incontestability of a mark does not affect its strength. Thus, a descriptive trademark, although it has become incontestable, may still only be entitled to minimal protection." *Id.* at 966 n.3. In *Microwave Sys., Corp. v. Apple Computer, Inc.,* 126 F.Supp.2d 1207, 1212 (S.D.Iowa 2000), the court concluded that "just because [a mark] is an 'incontestible' trademark does not render it immune from an attack that the mark is weak

and thus deserving of limited protection." The Court will follow the approach taken by other district courts in this circuit, and finds that the incontestability of a mark addresses but one element in the trademark infringement analysis.

The previous Arkansas case held no trademark infringement. B&B cites no authority for the proposition that incontestability makes any difference where a prior judgment otherwise bars a subsequent infringement action. The only recognized exception to issue preclusion for trademark infringement is a material change in the trademark's strength over an extended period of time. *See Test Masters Educational Services v. Singh,* 428 F.3d 559 (5th Cir. 2005).

Several years prior to *Singh*, the plaintiff in that case sued the same defendant for trademark infringement and unfair competition. The jury held that the plaintiff's mark was merely descriptive, had acquired secondary meaning, but that the defendant "was not subject to liability because it was an innocent prior user." *Id.* at 567. The jury did, however, enter a judgment in favor of the plaintiff on the issue of unfair competition. *Id.* On appeal, the Fifth Circuit held that the plaintiff "failed to provide sufficient evidence to support a finding that his mark had acquired secondary meaning," and also vacated the unfair competition verdict. *Id.* at 567-68. The Fifth Circuit remanded the case, instructing the district court to enter an order that the plaintiff's mark was invalid. *Id.* at 568. Directly following these proceedings, the plaintiff filed a second trademark application which the defendant opposed. *Id.* The district court enjoined the plaintiff from pursuing registration of its mark. *Id.*

Approximately one year later, the plaintiff again filed suit alleging trademark infringement and unfair competition. *Id.* The Fifth Circuit relied on issue preclusion to dismiss the case. The court held: "[t]he thrust of our holding is that [the plaintiff] has not alleged in his pleadings any

significant intervening factual change . . . evidence of 'dramatic growth in his business and 'skyrocket[ing]' revenues is not sufficient to justify re-litigation of the issues of secondary meaning in his mark." *Id.* at 575.

The Court finds *Singh* is persuasive authority.  Six years have passed between the verdict in the Arkansas case and the filing of the present suit.  B&B asserts the passage of time and its mark's recently conferred incontestability status as the two factors which warrant a disregard of the preclusion rules.  *Test Masters* rejected mere passage of time as a factor permitting relitigation of a previously failed claim.  While the passage of a markedly long period of time with the attendant material changes in the intervening period might justify another round of litigation, the court held that it would be the rare case indeed that would survive dismissal.  428 F.3d at 576. B&B's complaint alleges that "substantial sums of money per year" are spent to promote and advertise the mark, the mark has "gained wide public acceptance and association with Plaintiff," and that the products sold under the mark are distributed throughout the world."  *Compl.* at ¶¶ 9-11.

B&B's reliance on the incontestability of its mark as a basis for denying the application of preclusion lacks persuasive authority.  The Court finds the reasoning of the *Test Masters* case compelling and controlling.

The Court finds plaintiff's claims are barred by the doctrine of collateral estoppel. Therefore, defendant's motion to dismiss is granted.

IT IS THEREFORE ORDERED that plaintiff's motion to re-transfer [docket entry 16] is denied and defendants' motion to dismiss [docket entry 3] is granted.

SO ORDERED this 13th day of September 2007.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE