**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

B&B HARDWARE, INC.                                                      PLAINTIFF


v.

                               Case No. 4:06-CV-01654 SWW

HARGIS INDUSTRIES, INC., d/b/a
SEALTITE BUILDING FASTENERS, ET AL                          DEFENDANT


**HARGIS INDUSTRIES, LP'S REPLY TO PLAINTIFF'S RESPONSE TO
DEFENDANT'S BILL OF COSTS**

  Defendant Hargis Industries LP dba Hargis Industries, Inc. and dba Sealtite

Building Fasteners ("Hargis"), files this Reply to B&B's Response to Defendant's Bill of

Costs and in support would show the following:

1. <u>Plaintiff Has Failed To Meet Its Burden.</u>

  There is a strong presumption that a prevailing party shall recover its costs "in full

measure." *Concord Boat Corp. v. Brunswick Corp*., 309 F.3d 494, 498 (8th Cir. 2002).

The losing party bears the burden of making the showing that an award is inequitable

under the circumstances. *Id.*; *Equal Employment Opportunity Commission v.

Tomorrow's Child Learning Center*; 2008 WL 5102006 (E.D. Ark. December 1, 2008),

*citing 168th and Dodge, L.P. v. Rave Reviews Cinemas, LLC*, 501 F.3d 945, 958 (8th Cir.

2007) (a prevailing party is presumptively entitled to recover all of its costs and the

losing party bears the burden of overcoming the presumption that the prevailing party is

entitled to costs, meaning that the losing party must suggest a rationale under which the

district court's actions constitute an abuse of discretion) (internal quotations and citations

omitted).  In its Response, Plaintiff has failed to meet its burden.  Additionally, there is

no mention in the Response that awarding any of the costs requested in Hargis' Bill of

1

Costs would constitute an abuse of discretion.  For those reasons alone, the Defendant's Bill of Costs should be awarded in its entirety.

2.  <u>Plaintiff Has Made False and Misleading Statements Regarding Witness Fees.</u>

In its Response, Plaintiff states that the witness fees and costs "should be disallowed to some extent."  *See* Plaintiff's Response, page 5.  Plaintiff then attacks the receipts for Delphine Webb and makes the false statement that "Hargis is seeking reimbursement for the dining expenses of all 4 of these people in addition to Ms. Webb." *Id*. at 5.  That is simply a misrepresentation of the bill submitted by Hargis.  In the Witness Fees computation in Defendant's Bill of Costs, it clearly states that the subsistence amount requested for Delphine Webb is $149 for 2 days which equals $298. The Witness Fees are computed pursuant to 28 U.S.C. § 1821, which provides that a subsistence allowance shall be paid in an amount prescribed by the Administrator of General Services pursuant to section 5702(a) of Title 5 for official travel by Federal Government employees.  This section allows a total per diem rate for lodging and meals/incidentals of $149 per day.  While the Plaintiff wrongly suggests that Hargis seeks to recover an amount for Delphine Webb equivalent to the submitted receipts, the receipts are only presented as a means of support for the amount requested.  As the Court (and B&B) can see from the Witness Fee Chart and the total amount of witness fees' requested, Hargis clearly does not seek reimbursement for the dining expenses of persons other than Delphine Webb.  Furthermore, Hargis does not seek to recover an amount for Ms. Webb greater than that which is authorized under the foregoing statute.  A simple examination of Defendant's Bill of Cost and the Witness Fees computation makes this abundantly clear and obvious.  As for the "most egregious" receipt (as Plaintiff states in

its Response, p. 5), some of these items are in fact authorized incidentals and are allowable pursuant to the statute.

With respect to Steve Henderson, Plaintiff again misleads the Court by stating that Mr. Henderson's travel expenses were $1,493.80 and follows that sentence with the statement that Mr. Henderson stayed in Little Rock for 7 nights, implying that these expenses include 7 nights. First of all, Hargis is not requesting *travel expenses* in the amount of $1,493.80 as Plaintiff incorrectly argues in its Response; Hargis is requesting *witness fees* of $1,493.80 which are detailed in the chart in Defendant's Bill of Costs and clearly comprise 3 days subsistence, airfare and attendance fees.

With respect to Hargis' employees, there is no exception on witness fees for employees, nor does Plaintiff cite any authority to support its untenable position. Mr. Hulsey, Mr. Quehl and Ms. Timmerman were all witnesses for Hargis, identified as such in the pre-trial papers, and took time out of the workplace to travel long distance and appear at the trial. Timmerman and Hulsey reside in Texas and work in Hargis' Tyler, Texas office; both were called to testify.

Although Quehl, who resides in Ohio and is in charge of Hargis' Cincinnati office, did not testify, Hargis is still entitled to witness fees expended on his behalf. Quehl not only manages Hargis' office, but is in charge of the company's marketing operations and had knowledge of facts relevant to this case. Indeed, the Plaintiff requested and took his oral deposition prior to trial and designated portions of his testimony as evidence it might offer at trial. Hargis had every intention of calling Quehl as a witness and he actually travelled to Little Rock twice due to Hargis' inability to

3

predict precisely when B&B would finish its case in chief.[1]  Quehl was actually in transit to the courthouse, on his second trip, when Hargis finished its examination of the last witness physically present and available.   When the Court inquired as to further witnesses, Hargis made a strategic decision to rest in light of its assessment of the case at that moment and Quehl's unavailability to be immediately called.   Nevertheless, Quehl had in fact travelled to Little Rock with the intention of testifying.  Because Hargis made the decision not to call Quehl for the reasons noted does not mean that his expenses are not warranted.

Additionally, Plaintiff provides no authority for the position that Quehl's fees should not be awarded.   Finally, Plaintiff's argument regarding Quehl's travel dates is without merit and misleading.  It is clear from the receipts that Quehl was traveling from Ohio and booked his airfare (for the second trip) on or about June 26, 2010 with an arrival date of June 29 and a return date of July 1.  Neither Hargis nor anyone else knew exactly when B&B would finish its case in chief or when the trial would conclude. Therefore, making an airline reservation which allowed for a two-day stay in Little Rock was a reasonable decision to make under the circumstances.

3. Deposition Transcript Costs

Plaintiff complains that Hargis should not be allowed to recover both the written transcript costs and video.  However, there is legal authority which empowers the Court to award costs for both in certain circumstances.  In *Olander v. State Farm Mutual Auto.*

---

[1] As the trial progressed, Hargis attempted to elicit from B&B's counsel when it would finish its case in chief, but was never provided information adequate to make that determination. As a consequence, a number of witnesses actually travelled to Little Rock twice, including Mr. Quehl, as Hargis could not risk the unavailability of its witnesses. Counsel for B&B, after it had rested, implored counsel for Hargis to advise her whether Hargis did in fact intend to call two of its experts, Molly Richard and George Moran. Counsel for B&B expressed a great deal of concern over the expense of transporting its two rebuttal experts if it was not necessary.  When Hargis made the decision not to call Richard or Moran, it informed counsel for B&B of that decision such that B&B did not incur the travel and expert expenses associated with Mr. Fletcher (whose expert fees were $525 per hour) or Mr. Keegan (whose expert fees were $550 per hour).

*Ins. Co.*, 2001 WL 625758 at *2 (D.N.D. March 26, 2001), the Court held that "in order to obtain costs for videotaping *and* transcription the prevailing party must demonstrate that both were necessarily obtained for use in the case…" The Plaintiff itself understands the importance of videotape depositions for trial purposes, as every one of its depositions were videotaped, including the Hargis personnel it deposed.

Hargis respectfully submits that it was necessary to videotape the depositions of Mr. and Mrs. Bogatz for potential use at trial. At the time of the deposition and based on past history with B&B and Larry Bogatz, it was reasonable to assume that Hargis would likely use these videotape depositions in an effort to impeach the Plaintiff or its witnesses with inconsistent testimony. Mr. and Mrs. Bogatz are the owners and only officers of the Plaintiff, B&B Hardware. In short, they are B&B Hardware. Using videotape deposition for potential impeachment or other purposes at trial, particularly of a party opponent, is much more effective in communicating to the jury at trial than a written deposition. The jury can assess the witness at the point in time of the witness' deposition, listen to the witness' tone of voice and watch the witness' demeanor and reaction to questions posed and answered. These are not observations a jury can make with a written transcript. Therefore, Hargis chose to expend money to obtain these videotaped depositions for potential use in the case. Had B&B been the successful party in this case, there is little doubt it would have sought the costs associated with the videotaped depositions of Hargis personnel.

The other video depositions in question were purchased by Hargis because Plaintiff had noticed these depositions and requested a videotape of the depositions of Hargis' witnesses. Accordingly, Hargis chose to purchase these videos to assess each witness on camera and to be fully prepared for the potential cross examination at the trial

of the case.  In order to adequately defend against Plaintiff's claims for infringement and damages in the amount of twenty-three million dollars, and to properly prosecute its counterclaims of false advertising and false designation of origin of goods, Hargis had a good faith reason to expect that the videos in question would be used at trial.  The costs associated with those videos are clearly justified and should be included as reimbursable costs in this action.

Once again, Plaintiff misleads the Court in its request to disallow the following deposition costs- $274.50 for Dave Quehl, $246.50 for Tom Hulsey and $306.50 for Joe Hargis.  These amounts constitute the entire court reporter invoice, including both written and video deposition costs, when Plaintiff is supposedly asking the Court to disallow the video costs only.  Additionally, Plaintiff's unsupported "apportionment" of the cost per page of Mrs. Bogatz' deposition is not sufficient to support its contention, much less its burden.  If Plaintiff wanted to provide the Court with an accurate cost, it should have obtained a breakdown from the court reporting service.  Without that proof, Plaintiff's "calculation" is without support and should not be considered as anything other than mere speculation.

Regarding the condensed transcript, these transcripts provide an easier, faster and more convenient way to reference the deposition transcript and, therefore, reduce the attorney's fees, a party's time and costs involved in the extensive pre-trial preparation required in a case of this magnitude.

4.  Printing and Copy Costs

It is curious how the Plaintiff argues that Hargis should not be allowed copy costs for documents to be produced during discovery.  Hargis has not requested copy costs for documents *to be produced*.  In fact, it is the opposite situation.  The invoice from IVIZE

of Little Rock in the amount of $3,497.76 is what Hargis had to pay in order to receive *Plaintiff's* production, as Plaintiff is clearly aware.  These are not copy costs incurred for documents to be produced during discovery by Hargis.  In the case cited by Plaintiff, *Moyer v. DVA Renal Healthcare, Inc.*, the prevailing party requested costs for copying its own documents to be produced in discovery among other documents, which was not allowed.  That case is not relevant to the case at hand.

5. Expert Witness Fees

Plaintiff's argument regarding expert witness fees is without merit.  In order to support its position that Hargis should not be allowed its expert fees, Plaintiff relies on "Eighth Circuit precedent" and "authority", but provides neither.  In its only citation to "authority", Plaintiff cites *Neosho v. Clark*, 315 F.3d 1022, 1031 (8th Cir. 2002) and falsely states that the "[c]ourt analyzed section 1920 and determined that the district court was correct to deny expert witness fees to the prevailing party as costs."  *See* Plaintiff's Response to Defendant's Bill of Costs, page 6.  This is a flat misrepresentation of the holding in the case.  In *Neosho*, the Court dealt with a matter of first impression- whether the prevailing party (the parents) was entitled to expert witness fees as costs under the Individuals with Disabilities Education Act ("IDEA").  *Id.* at 1031.  The Court held that the prevailing party was not entitled to expert witness fees under the IDEA.

Although the general rule is to limit recovery for expert witness fees to the statutory allowance pursuant to 28 USC §1821, the Court may award expert witness fees under Federal Rule of Civil Procedure 54(d) "if, after carefully scrutinizing the prevailing party's bill of costs, the district court determines that the expert's testimony was crucial to the issues decided and the expenditures were necessary to the litigation."  *Nebraska Public Power District v. Austin Power, Inc.*, 773 F.2d 960, 975-976 (8th Cir. 1985).

In the case at hand, expert testimony was critical to the issues decided by the jury, particularly the testimony of Steve Henderson.  Mr. Henderson testified about Plaintiff's purported construction fastener website and expressed the opinion at trial that Plaintiff copied the photos of fasteners depicted on its construction fastener site from Hargis' website.  He also testified as to the bases for his opinion, going into some detail regarding the tests he performed and the findings he made to verify the validity and accuracy of his opinions.  Mr. Henderson's testimony was critical both to Hargis' defenses and the prosecution of its counterclaim.

With respect to the other experts- Molly Richard and George Moran- their retention was crucial due to the complex subject matter and issues in this case.  Plaintiff made every attempt to have admitted into evidence in this case the TTAB opinion which denied Hargis' application to register its mark.  Molly Richard has extensive experience before the TTAB and was retained in order to explain, if it became necessary, the practice and procedure of the TTAB, and to the extent allowed by the Court, those other matters described more fully in her expert report.  Ms. Richard also has extensive expertise representing parties with respect to domain names and metatags, and was prepared to opine on B&B's conduct with respect to the purchase of domain names utilizing the word, "Sealtite" and variations thereof and metatags using similar nomenclature.

Mr. Moran is a licensed professional engineer and professor of marketing, and was retained to opine on the lack of competitive proximity between the parties and the absence of any likelihood of confusion.  Due to the progress of the case, as perceived by the Hargis legal team, and the manner in which the case had developed before the jury, Hargis made a strategic decision not to call either expert. However, their expert assistance was critical in the overall defense of this case, and their fees and expenses

reasonable in light of the amount at stake in this litigation.  B&B recognized this fact in requesting and taking the depositions of both experts and in securing Messrs. Fletcher and Keegan as rebuttal experts.  Neither Ms. Richard nor Mr. Moran charged fees as high as either Mr. Fletcher or Mr. Keegan.  Furthermore, in a meet and confer between the parties, B&B agreed to pay the expert fees charged by Moran and Richard to give their depositions and the time utilized by both experts in preparing for their depositions not to exceed twice the amount of deposition time actually incurred.  B&B also agreed to pay for the travel time for Mr. Moran's trip from his home in Livingston, Texas to counsel's office in Tyler. While those charges have not yet been submitted by Hargis or paid by B&B, the agreement by B&B to pay same reflects B&B's recognition of the legitimacy of such expenses as a necessary cost of litigation in a case of this nature.

Because this is an exceptional case and the experts were crucial to the issues decided, Hargis respectfully requests that it be awarded its expert fees.

Defendant, Hargis Industries, LP dba Hargis Industries, Inc. and dba Sealtite Building Fasteners, prays that the Court approve and award Defendant its costs as set forth in the Bill of Costs previously submitted in this action.

Respectfully submitted,

Trey Yarbrough
Texas Bar No. 22133500
Debby Gunter
Texas Bar No. 24012752
YARBROUGH ♦ WILCOX, PLLC
100 East Ferguson, Suite 1015
Tyler, Texas  75702
(903) 595-3111
trey@yw-lawfirm.com

By:/s/ Trey Yarbrough
Trey Yarbrough

H. William Allen (ABN 69001)

9

Brooks C. White (ABN 2000093)
ALLEN LAW FIRM
212 Center Street, 9th Floor
Little Rock, Arkansas 72201
(501) 374-7100
hwallen@allenlawfirmpc.com
bcwhite@allenlawfirmpc.com

Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of August, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send immediate notification of such filing to the following other counsel:

Kathryn Bennett Perkins, Esq.
Rose Law Firm
120 E. 4th Street
Little Rock, Arkansas 72201
kperkins@roselawfirm.com

/s/ Trey Yarbrough
Trey Yarbrough