IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| B&B HARDWARE, INC., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | 4:06CV01654 SWW |
| | * | |
| HARGIS INDUSTRIES, INC., d/b/a | * | |
| SEALTITE BUILDING FASTENERS, | * | |
| ET AL., | * | |
| | * | |
| Defendant. | * | |

**Memorandum Opinion and Order**

Plaintiff B&B Hardware, Inc. ("B&B") brought this action against defendant Hargis Industries, Inc. ("Hargis") for trademark infringement, unfair competition, and false designation of origin. Hargis counterclaimed, alleging B&B obtained its trademark registration fraudulently, and asserting claims of copyright infringement, false advertising, false designation of origin, and unfair competition. The matter was tried before a jury on June 22-25, 28-30, 2010. The Court denied B&B's motion for judgment as a matter of law, and submitted B&B's claims of trademark infringement, false designation of origin, and unfair competition under both federal and state law and defendant's claims for false advertising and false designation of origin to the jury. The jury returned verdicts against B&B on all its claims and for Hargis on all its claims. The Court entered judgment on July 1, 2010.

Now before the Court is B&B's renewed motion for judgment as a matter of law or, in the alternative, for a new trial. For the reasons that follow, the Court denies the motion.

I.

The grant of judgment as a matter of law "is appropriate 'only if the evidence points all one way and is susceptible of no reasonable inferences sustaining the position of the non-moving party.'" *Hauser v. Kubalak,* 929 F2d 1305, 1307 (8th Cir. 1991)(quoting *Glass Design Imports, Inc. v. Import Specialties,* 867 F.2d 1139, 1142 (8th Cir. 1989)(citation omitted)). The standard that must be met is a rigorous one. The Court must

> (1) consider the evidence in the light most favorable to the prevailing party, (2) assume that all conflicts in the evidence were resolved in favor of the prevailing party, (3) assume as proved all facts that the prevailing party's evidence tended to prove, and (4) give the prevailing party the benefit of all favorable inferences that may reasonably be drawn from the facts proved.

*Western American, Inc. v. Aetna Cas. & Sur.Co.,* 915 F.2d 1181, 1183 (8th Cir. 1990). The Court must then deny the motion "if reasonable persons could differ as to the conclusions to be drawn from the evidence." *Id.*

Hargis made a claim for false advertising under 15 U.S.C. § 1125(a) based on the allegation that B&B wrongfully published photographs of Hargis' construction fasteners on B&B's construction fastener website for a period of approximately six weeks.[1] B&B argues that the Court should dismiss Hargis' claim as a matter of law because the construction fasteners at issue are visually identical. Citing McCarthy on Trademarks and Unfair Competition, B&B argues that if the

---

[1] To establish a false advertising claim under § 1125(a), a plaintiff must establish: (1) a false statement of fact by the defendant about its own product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement. *Allsup, Inc. v. Advantage 2000 Consultants, Inc.,* 428 F.3d 1135, 1138 (8th Cir. 2005).

parties' products are identical, then the use of a photograph of a plaintiff's product is not false or misleading.[2] B&B further cites *Merchant & Evans, Inc. v. Roosevelt Bldg. Products Co., Inc.,* 963 F.2d 628 (3rd Cir. 1992), for the proposition that when the parties' products are identical, defendant's use of a photo of plaintiff's product is not misleading. In response, Hargis argues that B&B presented no credible evidence to establish that B&B had ever sent any fastener designs to any manufacturer for production of specimens. Thus, there is no evidence that any constructions fasteners made from B&B designs even exist. Further, Hargis cites *Truck Equipment Service Co. v. Fruehauf Corp.,* 536 F.2d 1210 (8th Cir. 1976), which held that the defendant's use of the plaintiff's photographs in defendant's sales literature is a false representation prohibited by the Lanham Act, even if the defendant's product was not inferior in quality to the plaintiff's. *See also Bangor Punta Operations, Inc. v. Universal Marine Co.,* 543 F.2d 1107 (5th Cir. 1976)(Lanham Act violated where the defendant represented a photograph of plaintiff's trawler to be the defendant's); *Woodke v. Dahm,* 873 F.Supp. 179 (N.D. Iowa 1995)(violation of 15 U.S.C.§ 1125(a) where defendants used a photograph of plaintiff's product in an advertisement in which they represented the product to be one of their own); *Potucek v. Taylor,* 738 F.Supp. 466 (M.D.Fla. 1990)(use of photograph of competitor's product to advertise and sell one's own product is false advertising).

---

[2] 5 McCarthy on Trademarks and Unfair Competition §27.74 (4th ed. 2010) states:
Thus, § 43(a) is violated if the plaintiff's product is used to sell the defendant's product, even if the configuration of plaintiff's product does not qualify for trademark protection. Such a cause of action is made by pleading and proof that (1) defendant falsely represented that the picture of his competitor's product was his own; and (2) the pictured product is not identical to the one that the defendant is prepared to deliver.

However, if defendant legally sells a product *identical* to plaintiff's, then the use of a photo of plaintiff's product is not false or misleading.

The Court finds B&B is not entitled to judgment as a matter of law as to Hargis' counterclaim for false advertising as the verdict is supported by the evidence presented at trial.

Hargis' claim of false designation of origin also is based on B&B's publication of photographs of Hargis' construction fasteners on B&B's website that promoted B&B's new construction fastener line. B&B asserts that Hargis' claim is really a trade dress claim because the appearance of the product is at issue and Hargis did not meet its burden of showing evidence of non-functionality or secondary meaning.[3] In response, Hargis states its claim is not that B&B wrongfully copied the trade dress of its fasteners by developing, manufacturing, and offering for sale fasteners with the same or similar appearance. Instead, the wrongful act underlying Hargis' claim is B&B's appropriation of photos of Hargis' fasteners and placing them on B&B's website as a line of construction fasteners offered by B&B.

The court in *Fruehauf* considered two alleged wrongful acts: the defendant's use of photographs of plaintiff's trailer in its sales literature and defendant's copying of the exterior design of the plaintiff's trailer in the manufacture of its own trailer. The court held, "[t]he use of another's product, misbranded to appear as that of a competitor, has been repeatedly found to be 'a false designation of origin' actionable under §43(a)." 536 F.2d at 1216. Because the Court finds Hargis' false designation of origin claim is not a trade dress claim and the jury's verdict is supported by the evidence, B&B's motion for judgment as a matter of law is denied.

---

[3] To establish a claim for trade dress infringement, the plaintiff must demonstrate that its trade dress is: (1) inherently distinctive or acquired distinctiveness through secondary meaning; (2) nonfunctional; and (3) its imitation would result in a likelihood of confusion in consumers' minds as to the source of the product. *Gateway, Inc. v. Companion Products, Inc.,* 384 F.3d 503, 507 (8th Cir. 2004). "Trade dress is the total image of a product, the overall impression created, not the individual features." *Aromatique, Inc., v. Gold Seal, Inc.,* 28 F.3d 863, 868 (8th Cir.1994) (citing *Woodsmith Publ'g Co. v. Meredith Corp.,* 904 F.2d 1244, 1247 (8th Cir.1990)).

II.

"A motion for a new trial may be 'bottomed on the claim that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury.'" *Children's Broad. Corp. v. Walt Disney Co.,* 245 F.3d 1008, 1017 (8th Cir. 2001) (quoting *Montgomery Ward & Co. v. Duncan,* 311 U.S. 243, 251 (1940).  In deciding B&B's motion for a new trial, the Court must find "that prejudice or error has crept into the record, that the verdict is against the clear weight of the evidence, or that substantial justice has not been done."  *Greenwood v. Dittmer,* 596 F. Supp. 235, 239 (W.D.Ark. 1984), *aff'd,* 776 F.2d 785 (8th Cir. 1985).

> The trial court is in the best position to determine whether the alleged error affected the substantial rights of any party sufficient to warrant a new trial. Therefore, the trial court's decision deserves considerable deference. A trial court must determine whether an evidentiary ruling was so prejudicial as to require a new trial which would be likely to produce a different result.  We may only find a trial court's determination of the admissibility of evidence was prejudicial where there has been a clear abuse of discretion.

*O'Dell v. Hercules*, 904 F.2d 1194, 1200 (8th Cir.1990)(citations omitted).  "When the basis of the motion for a new trial is that the jury's verdict is against the weight of the evidence, the district court's denial of the motion is virtually unassailable on appeal." *Children's Broad. Corp. v. Walt Disney Co.,* 357 F.3d 860, 867 (8th Cir.2004) (internal citation/quotations omitted).

As grounds for a new trial, B&B argues: 1) the Court erred in refusing to defer to the TTAB opinions or, in the alternative, refusing to admit the TTAB opinions; 2) the Court committed substantial and prejudicial error in refusing to give appropriate jury instructions; and 3) the weight of the evidence does not support the jury verdict.

A.  TTAB opinions

In its unsuccessful motion for summary judgment, B&B argued the Court should give preclusive effect to TTAB findings involving the same parties and same trademarks. In the motion now before the Court, B&B focuses on a TTAB opinion dated August 28, 2007, denying Hargis' registration on the basis of its finding of likelihood of confusion.[4] As in its earlier motion, B&B relies on *Flavor Corp. of America v. Kemin Indus., Inc.,* 493 F.2d 275 (8th Cir. 1974) in support of its argument. The principle issue on appeal in *Flavor* was "whether a finding of the Court of Customs and Patent Appeals in a trademark cancellation proceeding operates as collateral estoppel in a subsequent trademark infringement action." 493 F.2d at 277. That determination, in turn, hinged on whether the CCPA was a "court of competent jurisdiction to bind the parties in a subsequent action." *Id.* at 279. The *Flavor* court's affirmance of the district court's decision to apply collateral estoppel in the subsequent infringement action was dependent on the fact that the earlier finding of likelihood of confusion was actually made and affirmed by the CCPA, an Article III court. Here, the findings were made by the TTAB. The Court finds the *Flavor* case, as well as the other cases cited by B&B, distinguishable from the case at bar.

B&B further argues the Court erred in refusing to defer to the TTAB opinions or, in the alternative, to admit the TTAB opinions involving the same parties. B&B argues the Court should have followed the standard enunciated in *Noah's Inc. v. Nark, Inc.,* 560 F.Supp. 1253 (E.D.Mo. 1983), *aff'd by* 729 F.2d 410 (8th Cir. 1984), which states "that although the civil action before a district court is intended to be a trial *de novo*, the decision of the Board must be accepted as controlling on issues of fact unless the contrary is established by testimony which in character and

---

[4]B&B references other TTAB decisions as well. *See* Pl's. Br. in Supp., at 5, 10 n.10.

amount carries through [sic] conviction." *Id.* at 1258. The Court found *Noah's Inc.* inapplicable as it involved a bench trial on an appeal of a TTAB decision, not a jury trial in a trademark infringement case. Further, even if the Court chose to follow the "thorough conviction" standard enunciated in *Noah*, the evidence introduced at trial, in character and amount, established the contrary of the TTAB's finding of likelihood of confusion with thorough conviction.

The Court further determined that it would be highly confusing and misleading to the jury, and prejudicial to both Hargis and B&B, to admit the TTAB opinions into evidence. The TTAB and the Eighth Circuit use a multi-factor test in the likelihood of confusion analysis, but not all of the factors are the same, and in a registration proceeding, the TTAB applies its factors and analyzes the evidence in a manner significantly different than the jury is required to do in an infringement action. Further, the TTAB resolved all doubts in favor of B&B over Hargis.

B.	Jury Instructions

B&B argues it is entitled to a new trial because the Court committed substantial and prejudicial error in refusing to give appropriate jury instructions. When a district court improperly instructs a jury, a new trial may be appropriate. *See McKay v. WilTel Communication Sys., Inc.,* 87 F.3d 970, 976 (8th Cir.1996); *see* Fed.R.Civ.P. 59. The court reviews jury instructions given by the district court for an abuse of discretion. *Sanders v. May Dep't Stores Co.,* 315 F.3d 940, 946 (8th Cir.2003), *cert. denied,* 539 U.S. 942 (2003). "The touchstone of our review is whether the instructions, 'taken as a whole, fairly and adequately represent the evidence and applicable law in light of the issues presented to the jury in a particular case.' Reversal for a new trial is appropriate only if there was an error that affected a substantial right of the moving party." *Swipies v. Kofka,* 419 F.3d 709, 716 (8th Cir. 2005)(citations omitted).

The resolution of the issue of likelihood of confusion requires consideration of a number of factors, and the Court listed in its instruction to the jury the six factors set forth in *SquirtCo. v. Seven-Up Co.,* 628 F.2d 1086, 1091 (8th Cir. 1980). One of the factors is the strength of B&B's mark. The Court refused to further instruct the jury on what they should consider when determining the strength of mark. The Court found that the proffered instruction may have been based on an incorrect statement of the law, and would have emphasized that one factor, strength of mark, over the others. B&B is not entitled to a new trial based on the Court's refusal to give s strength of the marks instruction.

B&B asserts it was error for the Court not to include language in the instruction on reverse confusion that the junior user is not seeking to trade on the senior user's good will and that the strength of the junior user's mark should be evaluated.[5] B&B cites *Minnesota Pet Breeders, Inc. v. Schell & Kampeter, Inc.,* 41 F.3d 1242, 1246 (8th Cir. 1994), in support of its instruction. Hargis argues B&B failed to adequately preserve an objection on the basis it sets forth in the motion. The Court finds there is no indication in the *Minnesota Pet Breeders* case that the language B&B objects to being omitted has such importance that its omission from the Court's instruction could constitute error, much less harmful error. Moreover, there is nothing in the Court's instruction which could have led the jury to believe that it must find that Hargis sought to profit from any goodwill in B&B's mark in order to find reverse confusion. The Court finds its refusal to give B&B's proffered instruction does not constitute error.

---

[5]B&B's proffered instruction contained the following language: "In such a case, the junior user does not seek to profit from the good will associated with the senior owner's mark. However, the senior owner is still injured. You should evaluate the strength of the junior user's mark so as to gauge its ability to overpower the senior user's mark. The junior user must show that the goods are competitive."

8

B&B proffered a jury instruction on incontestability of its mark. The Court refused to give it finding that the incontestable status of B&B's mark was not an issue to be decided by the jury and was not relevant to any issues to be decided by the jury. B&B argues the absence of the instruction was significant given that the jury heard evidence on the issue of descriptiveness although the issue later was not sent to the jury. Hargis argues evidence of descriptiveness of B&B's mark was admissible for purposes of proving that B&B's mark is weak, the first factor set forth in *SquirtCo*'s likelihood of confusion test, and the Court's instructions do not in any way instruct the jury that the degree of descriptiveness of B&B's mark should be considered in determining any aspect of B&B's claims. The Court finds the refusal to instruct the jury on incontestability of B&B's mark was not error.

B&B argues the Court erred in refusing to instruct the jury that they should consider the TTAB findings in determining whether there was a likelihood of confusion between the marks at issue. For the same reasons the Court decided not to admit the TTAB opinions into evidence, the Court finds it was not error to refuse to instruct the jury on those findings.

B&B proffered an instruction setting forth the law regarding the difference between an agent and an independent contractor. Hargis responded that such an instruction was not necessary because it was not asserting B&B was responsible for the actions of Sanjiv Trivedi and/or VisionTek. B&B then proffered an instruction saying that if the jury found that Sanjiv or VisionTek took actions on his or its own with respect to the photos without instruction from B&B, then the jury should find for B&B on Hargis' claims. Hargis argues the proffered instruction mentions only the copying of the photos, leaving out consideration of evidence that B&B copied size/weight charts from Hargis. In addition, Hargis asserts such an instruction was unnecessary, and giving it would have been arbitrary

because there were no similar instructions regarding B&B's claims against Hargis. The Court finds B&B is not entitled to a new trial on the basis of failure to give this instruction.

B&B argues the Court erred when it failed to give an instruction related to its unfair competition claim under the Lanham Act. The Court instructed the jury on B&B's claim in Instruction No. 13 and presented the claim to the jury on the verdict form. *See* Interrogatory No. 5.

B&B argues that the instruction the Court gave as to B&B's claim under the California statute was defective because it contained a requirement that B&B be damaged or harmed as a result of the violation of unfair competition. Hargis responds that B&B failed to preserve its challenge to this instruction, and that the requirement of harm comes from *Express, LLC v. Fetish Group, Inc.,* 464 F.Supp.2d 965,979 (C.D.Cal. 2006)(damages or harm are an element of all three types of prohibited business practices: unlawful, unfair, or fraudulent). The Court finds the instruction given sets forth the correct statement of law.

C. Weight of the Evidence

B&B argues the Court should grant a new trial because the weight of the evidence supports a finding of likelihood of confusion and does not support Hargis' counterclaims of false advertising and false designation of origin. As stated earlier, in order for a motion for new trial based on the sufficiency of the evidence to be granted, the jury's verdict must be against the great weight of the evidence so as to constitute a miscarriage of justice. *EFCO Corp. v. Symons Corp.,* 219 F.3d 734, 739 (8th Cir. 2000). The Eighth Circuit considers the evidence in a light most favorable to the non-moving party, giving the non-movant the benefit of all inferences. *EFCO*, 219 F.3d at 738. The Eighth Circuit "will not reverse a jury verdict for insufficient evidence unless no reasonable juror

could have returned a verdict for the non-moving party." *Id.* The district court's judgment is given great deference because the judge has had the benefit of hearing testimony and observing the witnesses throughout the trial. *Jones v. TEK Indus., Inc.,* 319 F.3d 355, 358 (8th Cir. 2003).

To prevail on its claim of trademark infringement, B&B had the burden of proving that Hargis used the Sealtite mark in a manner that is likely to cause confusion. *See* Court's Instruction No. 9. B&B again asserts the Court should have deferred to the prior ruling on likelihood of confusion made by the TTAB. For the reasons stated earlier, the Court declined to do so. The Court instructed the jury as to the six *SquirtCo* factors to be considered in determining likelihood of confusion: strength of the marks; similarity of the marks; competitive proximity of the goods; intent to confuse; actual confusion; and degree of care.

In the previous trial on B&B's trademark infringement case against Hargis, the jury found B&B's mark to be merely descriptive and that it had not acquired secondary meaning. The evidence presented in the trial at issue here showed that B&B's mark had not gained strength in any appreciable manner since that time. In fact, the evidence showed that B&B's sales revenues had stayed flat or even decreased at times since 2000. Larry Bogatz testified that the company had fewer referrals from distributors, on whom B&B allegedly depends for business, since moving to California. Its advertising expenditures were shown to be de minimus, and the Bogatzes called no witnesses, other than themselves, to even suggest that the public in any manner associates the B&B mark with the company or its products, or that it has any kind of notoriety. The testimony was that the company employs three regular employees, in addition to the Bogatzes.

Even if the B&B mark had incontestable status, such status does not confer strength on the mark. "Incontestable status does not make a weak mark strong." 6 McCarthy on Trademarks and

Unfair Competition § 32:155 (4th ed. 1996; updated 2010); *Oreck Corp. v. U.S. Floor Sys., Inc.,* 803 F.2d 166, 171 (5th Cir. 1986); *see also Petro Stopping Centers, L.P. v. James River Petroleum, Inc.,* 130 F.3d 88 (4th Cir. 1997); *Gruner + Jahr USA Pub. v. Meredith Corp.,* 991 F.2d 1072, 1077-78 (2nd Cir. 1993). All incontestable status does is deprive Hargis, as the defendant, from asserting mere descriptiveness as a defense. *See* 2 McCarthy on Trademarks and Unfair Competition §11:44 (4th ed. 1996; updated 2010). Even B&B seemed to concede that its mark is not so strong by asserting a theory of reverse confusion. The weight of the evidence introduced at trial supports a finding that B&B's mark is weak.

Both parties agree that the marks are phonetically identical. However, the evidence revealed that Hargis always uses the term "Sealtite" in the context of "Sealtite Building Fasteners." There is evidence in the record that the marks have some dissimilarity. This is the only *SquirtCo* factor that supported likelihood of confusion.

B&B argues that the evidence presented at trial "showed that the fasteners offered by the parties were similar." The evidence, however, showed convincingly that other than the fact both products are fasteners, they are distinctly and vastly different in their features and characteristics, functions and applications, and pricing structure. B&B's product is a high-precision fastener designed for light tolerances and high pressure environments. Its fasteners require pre-drilled and pre-tapped holes with a precision fit. Hargis' construction fasteners are self-tapping, self-drilling screws designed to attach sheet metal to wood and steel frames. B&B markets to NASA, Boeing and the military and claims that its screws are designed for equipment ranging from the space shuttle to underwater cameras. B&B offered no credible evidence to rebut Hargis' witnesses' testimony that there is no possible cross-over between the two companies' products.

Moreover, similarity is not the test. Competitive proximity is the test, and there was extensive testimony that Hargis is not and has never been in competition directly or indirectly with B&B. The Court finds the great weight of the evidence revealed that there is no competitive proximity.

The fourth factor in the determination of likelihood of confusion is intent to confuse the public. B&B presented no evidence of Hargis' intent to pass off its goods as those of B&B. B&B points to Joe Hargis' admission that he did not conduct any searches when he decided to adopt the name "Sealtite" as evidence of intent to confuse. Hargis asserts that any purported lack of investigation has no relevance to Hargis' intent to pass off its goods as those of B&B, and the evidence supports a finding that Joe Hargis had never heard of B&B or Sealtight when he decided on the Sealtite name.

The next factor in the *SquirtCo* analysis is incidents of actual confusion as to the source of the parties' fastener products. B&B argues the evidence shows without question that there was actual confusion. Hargis' employee Lynda Timmerman testified that she received approximately two calls per year from Fastenal[6] looking for a B&B part. She said she receives hundreds of telephone calls per week and that the inquiries from Fastenal were a rare occurence. Furthermore, there was no evidence that Fastenal was confused as to the source of the parties' fasteners. Bruce Crouch, another Hargis employee, testified Hargis would occasionally receive customer calls asking for a B&B product, and Crouch also testified that in March 2010 he received both an e-mail and website inquiry from a company, Medco, which was attempting to order a B&B part from Hargis. At trial Hargis presented evidence raising suspicions about Medco's inquiry both as to the timing

---

[6]B&B had an exclusive written distributorship agreement with Fastenal.

and the fact that Medco had submittted quotation requests to B&B dating back to 2003 but had never before made such a request to Hargis. Mr. Bogatz, his sister, and a couple of B&B employees testified about some misdirected telephone calls and faxes but not about any confusion about the source of the products. The Court admitted B&B's alleged evidence of actual confusion over Hargis' objection, but the jury apparently found such evidence unpersuasive.

The last element is the degree of care likely to be exercised by customers or potential customers. Citing Bruce Crouch's testimony regarding the pricing structure for Hargis' fasteners, B&B argues neither fastener is expensive and so it is reasonable to assume that an average customer would not be particularly discerning when buying fasteners. *See Board of Trustees of University of Arkansas v. Professional Therapy Sers., Inc.,* 873 F.Supp. 1280, 1291 (W.D.Ark. 1995)(when looking at degree of care expected of customers, focus is on the kind of product, the product's costs, and the conditions of purchase). Hargis, however, presented extensive evidence at trial regarding the high degree of care exercised by its customers or potential customers, including the types of applications in which its fasteners are used, the importance of price and quick turnaround, and the distinct differences between the markets to which Hargis and B&B sell. The Court finds B&B fails to demonstrate that the jury's finding on this element was against the weight of the evidence.

B&B argues the jury's verdict in favor of Hargis on its counterclaims is against the weight of the evidence. Specfically, B&B asserts Hargis presented no evidence showing that it had been or was likely to be harmed in the future by the posting of Hargis' photographs on B&B's website for six weeks or less. In *Porous Media Corp. v. Pall Corp.,*110 F.3d 1329, 1335 (8th Cir. 1997), the Eighth Circuit held that "[a] plaintiff suing to enjoin conduct that violates the Lanham Act need not

14

prove specific damage." Thus, a showing of a violation by B&B is alone sufficient to establish entitlement to injunctive relief under the Act.

### III.

IT IS THEREFORE ORDERED that the motion for judgment as a matter of law or in the alternative for new trial [docket entry 213] is denied.

DATED this 31st day of August, 2010.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE