# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

**B&B HARDWARE, INC**                                              **PLAINTIFF**

**v.**                      **CASE NO. 4:06-CV-01654 BSM**

**HARGIS INDUSTRIES, INC.**                                        **DEFENDANT**

## ORDER

Plaintiff B&B Hardware, Inc.'s ("B&B") motion to substitute briefs [Doc. No. 447] is granted, and its motion for judgment notwithstanding the verdict and/or to alter or amend judgment [Doc. No. 446] is denied.

## I.      BACKGROUND

This case's long, protracted history has been previously described and need not be repeated.  *See, e.g.,* Doc. No. 411 at 1-4 (describing history); *B&B Hardware v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1301-02 (2015) (same).  Suffice it to say that the twenty-plus year dispute ended in another jury verdict and judgment for defendant Hargis Industries, Inc. ("Hargis"), the outcome of which B&B argues was faulty for a variety of reasons.

After a five-day trial, a jury found for B&B and against Hargis on B&B's claims for federal trademark infringement, false designation of origin, and unfair competition.  Jury Verdict at 1, Doc. No. 429.  The jury found for Hargis on B&B's claim of unfair competition under California law, and for Hargis on its counterclaims for false advertising and false designation.  *Id.* at 1-2.  The jury also found that Hargis's infringement was not willful, and that B&B engaged in fraud to obtain incontestability status. *Id.* at 3.  As a result of the fraud

finding, judgment was entered for Hargis on all claims, and the order directing judgment explained that even if B&B had been successful, it had no remedy.  *See* Doc. Nos. 438, 439.

B&B moves for judgment or to alter the existing judgment for seven reasons: (1) the jury's fraud finding was erroneous; (2) the jury's finding for Hargis on the unfair competition claim under California law is factually and legally incorrect; (3) the jury was wrong in finding none of Hargis's profits were attributable to infringement; (4) the order finding preclusion because B&B's trademark was no longer incontestable was in error; (5) Hargis is not entitled to judgment on its counterclaims for failing to show damages; (6) B&B should receive judgment on Hargis's affirmative defenses; (7) the analysis finding B&B was entitled to no disgorgement of Hargis's profits was incorrect. *See generally,* Doc. No. 447-1.  Hargis argues that many of these issues have been waived because B&B did not properly raise them at trial or alternatively, that they fail on the merits.  *See* Doc. No. 455.  Although Hargis's position of waiver is certainly valid, the issues will also be addressed on the merits below.

## II.    LEGAL STANDARD

Admittedly, the standard for reviewing B&B's motion is complicated by the mixture of jury and court determinations.  The parties agreed to submit claims and certain factual determinations to the jury, whether by demand or by consent.  *See* Fed. R. Civ. P. 39(a), (c) (jury may be demanded or by consent); Fed. R. Civ. P. 49(b) (permitting general verdict with answers to written questions); Am. Compl. 14, Doc. No. 114 (jury demanded); Jury Verdict at 3 (written questions).  After the jury reached a verdict on the parties' claims and answered

written questions, an appropriate judgment was entered applying those determinations to the law.  Doc. No. 438 (order directing judgment); Fed. R. Civ. P. 58(b)(2)(A) (court must direct entry of appropriate judgment after jury returns general verdict with answers to written questions).  Therefore, the appropriate standard of review depends on whether B&B is attacking a jury determination or the subsequent order and judgment.

When B&B attacks issues decided by the jury, B&B's motion is brought under Rule 50, which should only be granted if the jury's verdict is utterly lacking in evidentiary support. *In re Prempro Products Liability Litigation*, 586 F.3d 547, 572 (8th Cir. 2009).  When evaluating a Rule 50 motion, evidence is construed most favorably to the prevailing party and all inferences are drawn in its favor, denying the motion "if reasonable persons could differ as to the conclusions to be drawn from the evidence."  *Western American, Inc. v. Aetna Cas. and Sur. Co.*, 915 F.2d 1181, 1183 (8th Cir. 1990).  Indeed, "where conflicting inferences reasonably can be drawn from evidence, it is the function of the jury to determine what inference shall be drawn."  *Canny v. Dr. Pepper/Seven-Up Bottling Group, Inc.*, 439 F.3d 894, 900 (8th Cir. 2006).

When B&B attacks the final judgment and not a jury finding, B&B's motion is brought under Rule 59.  *See* Fed. R. Civ. P. 54(a) (defining "judgment" as "a decree and any order from which an appeal lies"); *Jackson v. Schoemehl*, 788 F.2d 1296, 1298 (8th Cir. 1986) ("[W]here a postjudgment motion is timely filed and calls into question the correctness of that judgment it should be treated as a motion under Rule 59(e)." (internal quotations

3

omitted)).   Rule 59(e) permits a district court to correct its own mistakes immediately following entry of judgment. *Innovative Health Care, Inc. v. P.T.-O.T. Assocs.*, 141 F.3d 1284, 1286 (8th Cir. 1998).   The motion "cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment," *id.*, but rather "serve[s] the limited function of correcting manifest errors of law or fact or to present newly discovered evidence," *United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006).   B&B has only argued for legal errors.

## III.   DISCUSSION

### A.   Fraud Finding

The jury found that B&B committed fraud on the Patent and Trademark Office ("PTO"), which B&B argues was erroneous because it lacks "legal and/or factual justification." *See* Doc. No. 447-1 at 2, 4.   The jury was required to find (1) a material misrepresentation or the failure to disclose material information (2) made with the intent to deceive.   Instruction No. 19,  Doc. No. 430.   B&B's argument is difficult to follow, but it appears to make a two-fold attack: (a) the jury instruction was legally wrong and (b) the evidence does not support that the allegedly false declaration was "material" or that the declarant had an intent to deceive.   Neither argument is compelling.

As an initial matter, B&B references a trademark treatise to explain the fraud claim, as if to suggest that the jury instruction was wrong.   B&B at no point, however, states the instruction was improper, nor could it.   The instruction mirrored the Seventh Circuit's model

4

instruction and is supported by case law. *See* Federal Civil Jury Instructions of the Seventh Circuit § 13.5.8; *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 877–78 (8th Cir. 1994).

B&B's second argument about the insufficiency of the evidence is more interesting, but equally unavailing. Hargis's position at trial was that Larry Bogatz, B&B's president, misled the PTO – and thus committed fraud – by signing a declaration in support of his incontestability petition. That declaration required Bogatz to declare that B&B had not received a final decision on the merits adverse to its claim of ownership of the trademark that affected its right to register that mark. *See* Def. Ex. 69 (declaration of incontestability). Of course, B&B cannot reasonably dispute that Bogatz's declaration was false: the 2000 jury verdict found B&B's mark to be merely descriptive and devoid of secondary meaning which, under the law, means the mark could not be registered. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992) ("Section 2 of the Lanham Act provides that a descriptive mark that otherwise could not be registered under the Act may be registered if it has become distinctive of the applicant's goods in commerce. This acquired distinctiveness is generally called 'secondary meaning.'" (internal quotations omitted)). The issue, then, is whether there was sufficient evidence to suggest this false representation was fraudulent.

B&B focuses its argument on whether (a) the Trademark Trial and Appeal Board ("TTAB") had knowledge of the 2000 verdict and thus could not be mislead by Bogatz's statement or (b) that Bogatz had no intent to deceive because he was acting on counsel's advice. *See* Doc. No. 447-1 at 6-7. It is true that the TTAB – an entirely different office than

5

the PTO – referenced the 2000 verdict in its correspondence.  *See, e.g.,* Pl.'s Ex. 22.  But the same treatise B&B relies on to explain the law also explains that the process of filing for incontestability does not include a review of the merits of Bogatz's declaration.  Specifically, "[t]he [PTO] does not examine the merits of a[n incontestability] affidavit.  If the affidavit is received at a proper time, it is entered in the [PTO's] records without regard to its substantive sufficiency, although it is inspected for facial inconsistencies or omissions."  5 McCarthy on Trademarks and Unfair Competition § 19:140 (4th ed.).  Therefore, the TTAB's reference to the verdict does not mean that the PTO was aware or that the PTO considered the verdict and still converted B&B's mark to incontestable status.  *See, e.g., Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990) (omitting information on prior adverse ruling resulted in cancellation of mark for fraudulent activity).

B&B's argument that reliance on legal counsel precludes a fraudulent intent finding ignores other circumstances upon which the jury could find an intent to deceive.  The jury was free to reject Bogatz's testimony about his intent and reliance on counsel.  *See Willis v. State Farm Fire and Cas. Co.*, 219 F.3d 715, 720 (8th Cir. 2000) ("[A] jury is free to disbelieve any witness, even if the testimony is uncontradicted or unimpeached.").  That is especially true in situations where, as is the case here, the jury was permitted to draw a reasonable inference of intent considering the timing of the declaration occurring mere weeks before filing a new lawsuit, the witnesses' testimony about their interactions in the past, and Bogatz's admitted knowledge of the 2000 jury's findings.  *See Robi*, 918 F.2d at 1444

6

(affiant's knowledge of an adverse decision permits finding of fraudulent intent); *e.g., Orient Express Trading Co. v. Federated Dep't Stores, Inc.*, 842 F.2d 650, 653–54 (2d Cir. 1988) (considering totality of circumstances to determine elements of fraud).

It appears B&B did not raise this argument in a motion for a judgment as a matter of law under Rule 59(a).  Nevertheless, B&B has not shown that it is entitled to post-judgment relief because the jury's verdict has "a legally sufficient evidentiary basis" to find for Hargis on those issues.  *See* Fed. R. Civ. P. 50(b)(3) (permitting entry of judgment as a matter of law); Fed. R. Civ. P. 50(a)(1) (judgment as a matter of law asks if court finds a reasonable jury would have a sufficient basis for verdict).

B.    Unfair Competition Claim

B&B next argues that an inconsistent verdict must be corrected because the jury found for B&B on the trademark infringement and false designation of origin claim, which means that it "must" also find for B&B on the unfair competition claim under California law.  This claim required the jury to find (1) Hargis engaged in unlawful business practices in California and (2) B&B was damaged or harmed.  Instruction No. 13.  Notably, B&B does not argue that this instruction was invalid, thus the only issue is whether the verdict was inconsistent or B&B is otherwise entitled to judgment notwithstanding the verdict.

As Hargis correctly points out, B&B waived this "inconsistent verdict" argument by failing to raise the objection before the jury was discharged.  *Yazdianpour v. Safeblood Techs., Inc.*, 779 F.3d 530, 538 (8th Cir. 2015).  Even if B&B had raised the issue, the verdict

was not inconsistent.  Assuming B&B is still entitled to judgment on the Lanham Act claims – which, as described throughout this order, is not the case – then B&B met the first element requiring business activity that "violated state or federal law."  Although B&B's brief [Doc. No. 447-1] and reply brief [Doc. No. 459] spend considerable time emphasizing Hargis's business practices in California, B&B points to no evidence that it was harmed by this activity, as required by the second element.  Even if it had, the jury was free to accept that Hargis conducted business in California, that infringement occurred, but that B&B was not harmed or did not suffer damages.

Finally, it is worth noting that B&B incorrectly recites the law in its reply brief.  B&B states that the jury instruction instructs the jury that if it found unfair business practices to have occurred [*i.e.*, Hargis committed trademark infringement], then the jury "*must* find in favor of B&B."  Doc. No. 459 at 6 (emphasis in original).  This is inaccurate.  This "must" instruction does not appear in instruction number 13 – the "unfair competition under California law" instruction – but appears in instruction number 12 – the "unfair competition under federal law" instruction.  This could explain B&B's position that the jury had to find for it on both unfair competition claims.  The instruction, however, is clear that the California claim includes the extra element of damages.

Accordingly, the motion is denied because there is no inconsistency and no reason to direct judgment in B&B's favor on the unfair competition claim under California law.

C.    Lost Profits

8

B&B argues there was insufficient evidence to support the jury's finding that none of Hargis's profits were attributable to Hargis's infringement.  *See* Doc. No. 447-1 at 13–15. Hargis argues B&B is precluded from advancing this argument because the jury received B&B's proposed jury instruction describing the law, or alternatively, that there was more than enough evidence to permit the jury to find that Hargis's profits were attributable to factors other than using a specific mark.  *See* Doc. No. 455 at 14–15.

Regardless of whether B&B can properly raise the argument, the point is not compelling.  The jury was required to determine the amount of Hargis's profits "attributable to the infringement[.]" Instruction No. 16.  The jury's starting point was Hargis's total profit; then, the jury could deduct all or a part of profit "attributable to factors other than use of the trademark."  *Id.*

B&B argues that the expert witnesses "essentially agreed" on Hargis's profits, but that "Hargis made no effort to prove that any of those profits came from anything other than its Sealtite products . . . There is simply no evidence in the record to quantify any dollar amount of Hargis profits that are not attributable to the Sealtite mark without sheer speculation." Doc. No. 447-1 at 14.

The problem with B&B's position is that it presupposes *some* of Hargis's profits were attributable to infringement, when Hargis's position was that it did not infringe, and thus *none* of its profits are attributable to infringement.  Indeed, Hargis presented testimony from several of its customers to explain that the customers' motivation for purchasing Hargis

products was not connected with the Sealtite name – thus, not connected with the allegedly infringing trademark – but rather other characteristics such as customer service experience and quality of product.  There was evidence to support the conclusion that none of Hargis's profits were attributable to infringement and the jury accepted it.  *See White v. Pence*, 961 F.2d 776, 780-81 (8th Cir. 1992) (recognizing juries can draw difference conclusions and judge should not usurp the jury's function simply because another conclusion was possible).

Accordingly, the motion is denied because the evidence supports the jury's finding.

D.    Preclusion for Incontestability

B&B next attacks the post-trial order holding that collateral estoppel barred the action after the jury found that B&B committed fraud on the PTO.  By way of background, a trademark infringement claim requires (1) a valid, protectible mark and (2) a likelihood of confusion between plaintiff and defendant's marks.  *B&B Hardware, Inc. v. Hargis Indus.*, 569 F.3d 383, 389 (8th Cir. 2009).  To demonstrate a mark is valid and protectible (first element), B&B must establish, in the case of a descriptive mark, that its mark had acquired a secondary meaning.  *Id.*  In 2000, however, a jury found that B&B's mark was descriptive and had not acquired a secondary meaning.  Jury Verdict, *B&B Hardware, Inc. v. Hargis Indus., Inc.*, Case No. 4:98-CV-00372 (E.D. Ark. May 12, 2000), Doc. No. 68.  Consequently, the mark was not entitled to protection, and thus there was no need to determine whether B&B met the second element of likelihood of confusion.  *B&B Hardware*, 569 F.3d at 389.

When B&B filed this present lawsuit and alleged trademark infringement (again), B&B alleged new circumstances, namely that its trademark had become incontestable. *Id.* Incontestability prohibits Hargis from arguing that the mark was merely descriptive; essentially, B&B is given a "pass" on the first element – the element that doomed its prior case – and allows a jury to consider the second. *Id.* Indeed, this incontestability status was the "significant intervening factual change" that rendered collateral estoppel inappropriate. *Id.* at 388.

The problem now is that the jury determined B&B committed fraud on the PTO when B&B acquired incontestable status, which under federal law, removes the benefits of incontestability. Fraud removes the conclusiveness of protectibility and downgrades the status of the mark to the same status it had prior to incontestability – *i.e.*, the same status it had when the jury rendered its verdict in 2000. *Park n' Fly, Inc. v. Dollar Park & Fly*, 469 U.S. 189, 196 (1985); *Dakota Indus. v. Bever Best Ltd.*, 28 F.3d 910, 912–13 (8th Cir. 1994). Without incontestability, B&B no longer had that "significant intervening factual change" that was presumed true when the Eighth Circuit remanded to permit B&B to have another bite at the proverbial apple. *See B&B Hardware*, 59 F.3d at 388.

B&B argues this is a manifest error of law because the TTAB did not apply issue preclusion in its own proceedings. *See* Doc. No. 447-1 at 16–17. It is unclear whether B&B is arguing that the fraud finding is wrong – which, as explained above, is not the case – or whether the analysis and application of collateral estoppel is incorrect. It is also unclear how

the TTAB's decision has any impact on whether the present civil action in federal court is barred when the 2000 verdict and the present case both fail on the first element of infringement: protectibility. Nevertheless, after scrutinizing the prior decision, there appears to be no manifest error of law necessitating modification.

Accordingly, B&B has not pointed to any error in law that would not bar it from bringing this action, and thus the judgment for Hargis stands.

E.    Hargis's Counterclaims

As B&B correctly observes, judgment was entered for Hargis "on all claims," Doc. No. 439, which includes Hargis's counterclaims.  B&B argues Hargis was not entitled to judgment as a matter of law because "Hargis failed to present any evidence of damages," Doc. No. 447-1 at 18, though this argument is expanded to challenge whether evidence supported multiple elements in the relevant claims, *see, e.g., id.* at 19 ("Hargis failed to present any testimony regarding elements 2, 3, and 4 of this claim.").

As an initial matter, money damages were not necessary, but only that Hargis was "injured" or "is or is likely to be damaged."  *See* Doc. No. 447-1 at 18-19 (quoting jury instructions); *cf.* 5 McCarthy on Trademarks and Unfair Competition § 30:2 (4th ed.) ("In trademark cases, it is not necessary for plaintiff to prove actual damage or injury to state a prima facie case of infringement.  Injunctive relief does not require injury be proven."); *Sweetarts v. Sunline, Inc.*, 380 F.2d 923, 927 (8th Cir. 1967) (In infringement actions, plaintiff need not show actual confusion "[n]or need plaintiff show actual or possible

monetary injury.").  This is especially true in cases where, as is the case here, Hargis was not seeking monetary damages.  The treatise B&B relies on states this explicitly: "Injunctive relief does not require that injury be proven.  In effect, injury to the trademark owner is presumed."  5 McCarthy on Trademarks and Unfair Competition § 30:10 (4th ed.).

Even if B&B were correct, there was evidence for the jury to infer injury and damages.  Based on the verdict, it is clear the jury accepted Hargis's argument that B&B copied photos, text, or size and weight charts from Hargis's website and posted them to B&B's website as B&B's fasteners.  *See* Instruction No. 17(1).  Assuming this is true, *Hallmark Cards, Inc. v. Monitor Clipper Partners, LLC*, 758 F.3d 1051, 1056 (8th Cir. 2014) (viewing evidence in the light most favorable to prevailing party), Hargis suffered injury when it had to engage experts and combat B&B's activity.  *See* Doc. No. 455 at 19 (recounting testimony and use of experts and counsel to respond to website); *Nat'l Fed'n of the Blind v. Loompanics Entersp.*, 936 F. Supp. 1232, 1245–46 (D. Md. 1996) ("[A] plaintiff does not have to await the consummation of threatened injury to obtain preventative relief" under the Lanham Act.); 15 U.S.C. § 1116 (authorizing injunctive relief "to prevent the violation" of the registrant of a mark).  To the extent B&B is extending this argument to include other elements, that attempt also fails because there was sufficient evidence in the record to find the other elements were met.

Accordingly, B&B's argument is without merit and the motion is denied.

F.     Affirmative Defenses

B&B argues that it is entitled to judgment on Hargis's affirmative defenses (unclean hands, estoppel, laches, and acquiescence) "to the extent that those defenses made up any part of the court's reasoning in how it applied the equities."  Doc. No. 447-1 at 21.  As Hargis correctly identifies (and B&B concedes), the equitable defenses were not sent to the jury and were never analyzed in the order discussing disgorgement. *See* Doc. No. 455 at 21; Doc. No. 447-1 at 21 (B&B stating that "[t]he court's order does not mention any specific reliance or findings on those defenses.").  The order denying Hargis's motion for judgment required Hargis to "move for judgment on the basis of [the] defenses after an adverse finding of liability at trial."  Doc. No. 411.  Hargis made no such motion, and thus the affirmative defenses have never been considered.  Accordingly, the motion is denied.

G.   Disgorgement of Profits

Finally, B&B argues that the order deciding that it was not entitled to disgorgement was in error because: (a) contrary to the jury's finding, it presented "overwhelming evidence of willful infringement"; (b) it was entitled to money damages as a matter of law; and (c) considering whether B&B lost sales as a result of Hargis's actions is contrary to law. *See* Doc. No. 447-1 at 25-26, 29.

First, B&B argues there was overwhelming evidence of intentional infringement to suggest the jury's finding to the contrary was erroneous.  Of course, B&B's failure to raise this point prior to submission to the jury waives the argument now.  *See* Fed. R. Civ. P. 50(b); *Pulla v. Amoco Oil Co.*, 72 F.3d 648, 655 (8th Cir. 1995).  Notwithstanding that

obstacle, B&B's position also fails on the merits.  Willful infringement means that (a) Hargis knew it was infringing on B&B's mark or (b) acted with indifference toward B&B's rights. Instruction No. 20.  Although it is clear that Hargis had, at the very least, constructive notice of B&B's registration, willfulness can require more than knowledge of registration.  *See, e.g., Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V.*, 357 F. Supp. 2d 1105, 1129 (S.D. Iowa 2005) (citing factors to consider); *3M v. Johnson & Johnson Orthpaedics, Inc.*, 976 F.2d 1559, 1581 (Fed. Cir. 1992) ("When determining whether infringing conduct warrants a finding of willfulness the court must examine the totality of the circumstances of the case.").  Although B&B presents several circumstances to suggest Hargis willfully infringed, there was also evidence, such as the ongoing litigation repeatedly finding no infringement and the fact that the two companies engaged in different markets, to suggest unintentional conduct.  Appropriately, then, the issue was submitted to the jury and the jury's determination need not be disturbed.  *See Cass Cty. Music Co. v. C.H.L.R., Inc.*, 88 F.3d 635, 644 n.7 (8th Cir. 1996) ("[I]t necessarily follows that the willful or innocent nature of the infringement . . . would be [a] jury question[.]").

B&B is correct that the order denying Hargis's motion for judgment presumed willfulness.  *See* Doc. No. 447-1 ("Again, the Court's order denying summary judgment . . . [found] knowledge of B&B's registration, and thus B&B's right of exclusive ownership . . . [to] create a jury question on whether Hargis willfully infringed on B&B's mark."); Doc. No. 411 at 14.  Of course, this assumption must be kept in the context of those pending

motions, the resolution of which assumes certain inferences to be true and gave B&B, the non-movant, the benefit of the doubt.  *See Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007).  Although it is true that *Masters v. UHS of Delaware, Inc.*, 631 F.3d 464 (8th Cir. 2011), found that knowledge of a violation creates an inference of willfulness, *id.* at 471–72, this merely presents the jury with an alternative inference that it was free to accept or reject. *See Canny*, 439 F.3d at 900 ("where conflicting inference reasonably can be drawn from evidence, it is the function of the jury to determine what inference shall be drawn").

Second, B&B claims it was automatically entitled to a disgorgement of some amount of profits by proving a Lanham Act violation.  Before B&B can advance this argument, it must have succeeded on an infringement claim, which as discussed above, B&B is precluded from advancing.  Nonetheless, the argument fails because the Lanham Act explicitly makes disgorgement discretionary: "[Upon a finding of infringement,] the plaintiff shall be entitled . . . *subject to the principles of equity*" to recover profits.  15 U.S.C. § 1117(a) (emphasis added); *Masters*, 631 F.3d at 474–75 ("Under 15 U.S.C. § 1117(a), the district court has *discretion* to award monetary relief itself or to increase or decrease the jury's award of profits." (emphasis added)).

Finally, B&B argues the disgorgement analysis was improper because considering whether B&B lost sales due to Hargis's infringement was improper.  *See* Doc. No. 447-1 at 29-30.  It is true that evidence of B&B's lost sales was considered in the analysis.  *See, e.g., id.* at 5.  This was not dispositive, however, and was included in balancing many factors to

16

determine whether equity favored disgorging Hargis of any of its profits.  *See* Doc. No. 438 at 4-5 (noting "whether sales have been diverted" is one of several factors considered by the Third, Fourth, and Fifth Circuits).  If B&B's lost sales could never be considered, disgorgement could only stand as a penalty, which undermines B&B's unjust enrichment theory and the purpose of disgorgement in infringement cases.  *See* Doc. No. 447-1 at 30 (B&B's status report stating it was seeking an award of "Hargis's profits for its unjust enrichment"); *Masters*, 631 F.3d at 474 (monetary relief must be "compensatory, not a penalty.").

Accordingly, the motion is denied because B&B has not shown that any manifest error occurred to modify the judgment.

## IV.  CONCLUSION

For the reasons set forth above, B&B's motion for judgment notwithstanding the verdict and/or to alter judgment [Doc. No. 446] is denied.  B&B's motion to substitute briefs [Doc. No. 447] is granted, and its amended brief [Doc. No. 447-1] was considered.

IT IS SO ORDERED this 16th day of February 2017.

_Brian S. Miller_
UNITED STATES DISTRICT JUDGE